STATEWIDE GRIEVANCE COMMITTEE *v.*
ALAN SPIRER
(AC 15852)

Dupont, C. J., and Schaller and Spear, Js.

Argued March 3—officially released August 26, 1997

*Daniel B. Horwitch,* statewide bar counsel, for the appellant (plaintiff).

*Elliot R. Warren,* for the appellee (defendant).

*Opinion*

DUPONT, C. J. The statewide grievance committee (committee) appeals from the judgment of the trial court ordering a six month suspension of the defendant, Alan Spirer, from the practice of law. The committee's sole claim on appeal is that the period of suspension should have been longer.

After a plea of guilty in the federal court, Dorsey, J., the defendant was convicted on June 28, 1995, of violating 18 U.S.C. § 1344 (a) (1) and (2),[1] and 18 U.S.C. § 2,[2]

---

[1] At the time of the defendant's offense, 18 U.S.C. § 1344 (a) provided: "Whoever knowingly executes, or attempts to execute, a scheme or artifice—

"(1) to defraud a federally chartered or insured financial institution; or

"(2) to obtain any of the moneys, funds, credits, assets, securities or other property owned by or under the custody or control of a federally chartered or insured financial institution by means of false or fraudulent pretenses, representations, or promises, shall be fined not more than $10,000, or imprisoned not more than five years, or both."

In 1989, 18 U.S.C. § 1344 was amended to provide: "Whoever knowingly executes, or attempts to execute, a scheme or artifice—

"(1) to defraud a financial institution; or

"(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

"shall be fined not more than $1,000,000 or imprisoned not more than 20 years, or both."

[2] Title 18 of the United States Code § 2 provides: "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands,

for defrauding a financial institution and for aiding and abetting an offense against the United States, respectively. He was sentenced to probation of three years, and was ordered to pay $7030.80 for the cost of his supervision, restitution in the amount of $75,000, and a fine of $5000. In addition, the defendant was confined to his home for one year under an electronic monitoring system, and was required to perform four hours of community service per week in a local legal aid agency for the first two years of the probation.

The committee filed a presentment in the trial court pursuant to Practice Book § 28B.1[3] in order to seek the

induces or procures its commission, is punishable as a principal.

"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

[3] Practice Book § 28B.1, effective October 1, 1990, governs the discipline of attorneys convicted of a felony in other jurisdictions, and provides in relevant part: "(a) An attorney shall send to the statewide bar counsel written notice of his conviction in any court of the United States, or the District of Columbia, or of any state, territory, commonwealth or possession of the United States of a serious crime as hereinafter defined within ten days of the entry of the judgment of conviction. That written notice shall be sent by certified mail, return receipt requested.

"(b) The term 'conviction' as used herein refers to the disposition of any charge of a serious crime as hereinafter defined resulting from either a plea of guilty or nolo contendere or from a verdict after trial or otherwise, and regardless of the pendency of any appeal.

"(c) The term 'serious crime' as used herein shall mean any felony as defined in the jurisdiction in which the attorney was convicted. . . .

"(e) Upon receipt of the written notice of conviction the statewide bar counsel shall obtain a certified copy of the attorney's judgment of conviction, which certified copy shall be conclusive evidence of the commission of that crime in any disciplinary proceeding instituted against that attorney on the basis of the conviction. Upon receipt of the certified copy of the judgment of conviction, the statewide bar counsel shall file a presentment against the attorney with the superior court for the judicial district wherein the attorney maintains an office for the practice of law in this state . . . . *The sole issue to be determined in the presentment proceeding shall be the extent of the final discipline to be imposed,* provided that the presentment proceeding instituted will not be brought to hearing until all appeals from the conviction are concluded unless the attorney requests that the matter not be deferred. . . ." (Emphasis added.)

defendant's suspension from the practice of law. The trial court suspended the defendant from the practice of law for six months. During the presentment proceeding, the committee did not argue to the trial court that the defendant should be disbarred, nor did it argue for a specific term of suspension, although it argued that the defendant should be suspended for some period of time.

The events that led to the defendant's arrest and sentencing in federal court and suspension from the practice of law in state court are those that follow. The defendant was a named partner in the law firm of Spirer, Nasser and Marcus in Westport. Various members of the firm developed a scheme whereby financially distressed homeowners could refinance their homes through what was purported to be a sale of the property. The firm represented Comfed Savings Bank, Comfed Mortgage Company, and the Swiss Conservative Group (Swiss).

The transactions organized by the defendant's firm involved situations where a "buyer" who was not a bona fide purchaser, but instead a friend or relative of the "seller," would purport to "buy" the property from the "seller" and would lease the property back to the "seller." Swiss was responsible for providing a "buyer" if the "seller" did not have one already. Swiss would arrange a new mortgage such that the "buyer's" monthly lease payment would equal the amount of the mortgage payment on the property. The "seller" and the "buyer" would execute four agreements: a contract for the sale of real property, a lease, an option agreement, and a three party agreement between the "seller," the "buyer" and Swiss. The contract of sale, which was the only one of the four agreements that the mortgagee bank was ever given, described the purported sale. The lease arranged for the "buyer" to pay the mortgage as the lease payment. The option agreement gave the "seller" the ability to regain title to the property. Finally, the

third party agreement provided for a fee to Swiss equaling 20 percent of the "sale price" of the property. In effect, the mortgagee bank was led to believe that it was lending to a bona fide purchaser, when in fact there was no actual sale being made.

The defendant's firm participated as closing attorneys in several transactions of this kind between February, 1988, and May, 1989. The firm was required by the Comfed Savings Bank to fill out a United States Department of Housing and Urban Development Statement, Form HUD-1 (HUD-1). The closing attorney needed to certify on that form that the funds distributed were a true and accurate accounting of the transaction. Here, the certification was false. The trial court found that although the defendant made it clear to his partners that he did not approve of these transactions, he was fully aware of the transactions and did nothing to stop the fraudulent activity. In addition, the trial court found that the defendant was aware that the HUD-1 forms were being falsified. The defendant's conviction in federal court arose out of a transaction that began in September, 1988.

The committee claims on appeal that the trial court abused its discretion when it (1) suspended the defendant from the practice of law for only six months, and (2) did not discipline the defendant further because of his admission at the presentment hearing that he had made certain misrepresentations in federal court.

Hearings concerning the eligibility to practice law of attorneys who have been convicted of a felony in Connecticut are governed by Practice Book § 28B and by General Statutes § 51-91a.[4] The statute, on its face,

---

[4] General Statutes § 51-91a provides: "Hearing re eligibility to continue practice of law for attorney convicted of felony. Order. Suspension. Appointment of trustee. (a) After sentencing an attorney who has been convicted of a felony, the court shall hold a hearing on the issue of the eligibility of such attorney to continue the practice of law in this state. Such hearing

applies only to felony convictions in state court because it provides that "[a]fter sentencing an attorney who has been convicted of a felony, the court shall hold a hearing on the issue of the eligibility of such attorney to continue the practice of law in this state. . . ." Thus, the statutory language contains an assumption that the court that convicts the attorney is the same one that sanctions him, which would not be the case if an attorney was convicted in federal court or in another state. This statute gives the trial court the power to determine, under the circumstances of each case, what sanction is appropriate. Under the statute, an attorney convicted of a felony in Connecticut may be disbarred, suspended, or disciplined in some other manner, in the discretion of the trial court. The statute is the only substantive statute in Connecticut that outlines the appropriate sanctions for attorneys convicted of felonies.[5]

There is no statute or rule of practice that specifically deals with the length of suspension, if suspension is deemed the appropriate discipline by the trial court, for an attorney convicted of a felony in another jurisdiction, although Practice Book § 28B.1 provides for the procedural aspects of this type of case. There is a void in

shall be held within thirty days of sentencing or when all appeals from the conviction are concluded, whichever is later, except that the attorney may request that the hearing not be delayed until all appeals are concluded.

"(b) At such hearing, the attorney shall have the right to counsel, to be heard in his own defense, and to present evidence and witnesses in his behalf.

"(c) After such hearing, the court shall enter an order dismissing the matter or imposing discipline upon such attorney in the form of suspension for a period of time, disbarment, or such other discipline as the court deems appropriate. *If the court suspends the attorney, the period of suspension shall be not less than seven years for conviction of a class A felony and not less than five years for conviction of a class B felony.*

"(d) Whenever the court enters an order disciplining an attorney under this section, it may appoint a trustee, under the rules of court, to protect the interests of the disciplined attorney and his clients." (Emphasis added.)

[5] Practice Book § 28B, which provides the procedural vehicle for bringing complaints against attorneys who have been convicted of a felony in the courts of this state, does not mandate any particular discipline as a sanction.

the statutes and rules of practice concerning such cases. The issue, which is one of first impression in Connecticut, is whether § 51-91a should be applied even though it does not facially concern the discipline of attorneys convicted of felonies in other jurisdictions.[6] If the statute should be applied, we would then need to determine whether the trial court had any discretion as to the period of suspension to be imposed in this case, once it had determined that the defendant should be suspended for some period of time from the practice of law.[7]

The committee refers to § 51-91a as though it applies, but makes no argument in reference to it. The defendant recognizes that § 51-91a does not specifically apply, but argues in the alternative that the statute, if applicable, allows a range of sanctions, including suspension, disbarment or other discipline. The defendant also argues that the portion of the statute providing for specific periods of suspension for the commission of class A and class B felonies, in the event the court chooses suspension, does not apply because the maximum sentence for his crime at the time of its commission was five years, which is a class D felony, under Connecticut law. The defendant also argues that since § 51-91a does not apply to a federal felony, the only authority that this court can look to in determining the latitude the trial court had in imposing a sanction is Practice Book

[6] The governance of the conduct of lawyers lies with the judicial branch of government. It is the judiciary's responsibility to govern attorney conduct and statutes cannot restrict the inherent powers of the courts to discipline attorneys for misconduct. *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 239, 558 A.2d 986 (1989). Because the judges of the Superior Court have not promulgated a rule that applies in the situation here, this case does not present a conflict between a rule and a statute. See *Heiberger* v. *Clark*, 148 Conn. 177, 169 A.2d 652 (1961).

[7] Both parties and the trial court assume that this case involves the discretion to impose an appropriate sanction and that our review is limited to a determination of whether that discretion was abused. This assumption is not binding on us. See *State* v. *Cosby*, 6 Conn. App. 164, 166, 504 A.2d 1071 (1986).

§ 28B.1, which specifically deals with the procedure for the discipline of attorneys convicted of a felony in another jurisdiction. That rule, however, makes no specific provision for any particular sanction or for any particular period of suspension, depending upon the severity of the crime.

We have already concluded that § 51-91a facially concerns the discipline of attorneys convicted of felonies in this state. The statute mandates specific periods of suspension for the conviction of felonies classified by Connecticut statutes as A and B felonies. We now must determine whether, in the absence of any other statute or rules of practice governing the discipline of attorneys convicted of A or B felonies in other jurisdictions, the statute should also be applied when there has been a conviction of these felonies in other jurisdictions.

We first examine the rules of the Superior Court. Practice Book § 28B (c) relates to the discipline of attorneys convicted of a felony "in this state" and specifically provides that "[a]fter . . . hearing, the judge shall enter an order dismissing the matter or imposing discipline upon such attorney in the form of suspension for a period of time, disbarment, or such other discipline as the judge deems appropriate." Thus, the court is given, under § 28B, discretion ranging from dismissal to disbarment.

Section 28B.1 relates to the procedure for the discipline of attorneys convicted of felonies in jurisdictions other than in Connecticut, and, contrary to § 28B, makes no mention of any sanction other than suspension or disbarment. Section 28B.1 mandates no specific terms of suspension for the conviction of any felonies. It simply states that the sole issue of a presentment proceeding is the "extent of the final discipline to be imposed." We recognize that the language of § 51-91a must be "informed by the judiciary's responsibility for governing

attorney conduct." *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 238, 558 A.2d 986 (1989). Because the judiciary's rules of practice, Practice Book §§ 28B and 28B.1, do not provide guidance in this case, we look to § 51-91a to determine whether we should apply its provisions to this case.

There are very few cases that deal with situations similar to this case, and they are not recent ones. In *Barnes* v. *District Court of Appeal*, 178 Cal. 500, 173 P. 1100 (1918), the California Supreme Court considered a case involving an attorney who had been convicted of a felony in the United States District Court for the district of Alaska. Subsequently, disbarment proceedings were brought in a California state court. Two relevant civil code sections applied, one that provided that an attorney could be disbarred or suspended following the conviction of a felony or misdemeanor involving moral turpitude, and one that provided that the clerk of the court that issued the conviction had to provide the Supreme Court with a record of the conviction. The defendant, Barnes, argued that since a California state court could not compel an Alaska federal court to produce the record of conviction, the California court did not have jurisdiction over his case, and, therefore, could not sanction him.

The *Barnes* court rejected this argument, holding that the provision relating to sanctions based on convictions of felonies involving moral turpitude should not be limited to convictions in the state of California. Id., 504–505. The court's reasoning was that the bad moral character shown by the attorney, which reflected poorly on his ability to practice, is the same, no matter where he committed the offense. The court, therefore, was not limited by the fact that the civil code provision applied only to cases in which the court convicting the defendant and the court that subsequently issued the suspension were within the same court system. "The

reasons which induced the legislature to prescribe [the conviction of a felony or misdemeanor involving moral turpitude] as a ground for disbarment are as potent when applied to a conviction in a court of another state, or in a court of the United States, as when applied to a conviction in the courts of this state." Id., 505.

In *State* v. *Riddle*, 213 Ala. 430, 105 So. 259 (1925), the Supreme Court of Alabama addressed a situation where an attorney was convicted of a felony in the United States District Court. A disciplinary proceeding was brought in an Alabama state court. The code section relevant to disciplinary proceedings provided that an attorney must be removed by the Circuit Court for felony convictions other than manslaughter, and for misdemeanors involving moral turpitude; in both cases the conclusive evidence would be the record of conviction. The defendant, Riddle, argued that because he was convicted in federal court, and because the code did not specify federal convictions, he could not be sanctioned in state court. The court rejected this argument, holding that "[t]he language . . . is general, and, in common understanding, as well as for fitness for the purpose in view, it must include convictions in federal as well as in state courts; and this is in harmony with the great weight of reason and authority." Id., 434.

The *Riddle* court reasoned that public policy and the need for a consistent body of law dictate the inclusion of federal convictions in a state disciplinary statute. "The policy of the statute is plain: When an attorney has been convicted of any criminal offense within the classes specified, the *fact of conviction* renders him an undesirable member of the legal profession . . . ." (Emphasis in original.) Id., 432. "We can recognize no difference between the moral effects of a conviction in either [state or federal] court." Id., 434.

Statutes are declarative of public policy. *Laurel Bank & Trust Co.* v. *Mark Ford, Inc.*, 182 Conn. 437,

442, 438 A.2d 705 (1980). Here, it is obvious that the judges in enacting their rules for the disciplining of attorneys intended and the legislature intended, in enacting § 51-91a, to implement a policy to protect the public from certain attorneys. Section 51-91a has as its purpose the protection of society from lawyers who are convicted of serious felonies, that is, class A or B felonies, for a specific length of time, in the event that a trial court deems that suspension from the practice of law is necessary. The statute establishes the same public policy to which the judiciary subscribes. See *Statewide Grievance Committee* v. *Rozbicki*, supra, 211 Conn. 238.

To hold that an attorney convicted of a federal felony could not be disciplined in a manner similar to that delineated by § 51-91a because of the absence of a statute or rule dealing with convictions of felonies in other jurisdictions would create an inconsistent body of law, and would violate public policy.

We conclude that § 51-91a should be applied to attorneys who have been convicted of felonies in federal court or in other state courts. This reading of the statute is in keeping with public policy and existing law, relating to convictions of felonies within the state. We expand the application of the statute because of our inherent supervisory authority over attorney conduct, as delineated in *Pinsky* v. *Statewide Grievance Committee*, 216 Conn. 228, 578 A.2d 1075 (1990).

In *Pinsky*, the defendant sought to appeal from the public reprimand issued against him by the statewide grievance committee. The committee argued that, pursuant to General Statutes § 51-90 et seq. and Practice Book § 27B et seq., there was no statutory right to appeal from a reprimand, although there was a right to appeal from the outcome of a presentment proceeding. Our Supreme Court held that, although no statute gave

a right to appeal from a reprimand, the trial court nevertheless had jurisdiction to hear the appeal pursuant to its inherent supervisory power over attorney conduct. Id., 232. "General Statutes § 51-90 et seq. and Practice Book § 27B et seq. are not restrictive of the inherent powers which reside in courts to inquire into the conduct of their own officers, and to discipline them for misconduct." (Internal quotation marks omitted.) Id., 233. The court, noting that public notice of a reprimand can be equally damaging to an attorney's reputation as the publicity attending a presentment proceeding, held that it would be inconsistent to provide a right of appeal from presentment proceedings but not from a reprimand. Id.

The *Pinsky* court held that it would be inconsistent to allow a right of appeal from one type of sanction proceeding and not from another. It also would be inconsistent in this case for us to conclude that a felony committed in violation of Connecticut law is subject to sanction with a suspension for a given period of time in certain instances, but a felony committed in violation of federal law is not subject to the same sanction, in the same instances, simply because no statute or rule governs. Because there is no statutorily authorized discipline or rule governing the length of suspension in cases such as this, we adopt, pursuant to our inherent powers, the range of sanctions that the legislature has adopted for felonies committed in the state. These sanctions comport with public policy.

Section 51-91a (c) mandates that "[i]f the court suspends the attorney," the period of suspension from the practice of law for a conviction of a class A felony "shall be not less than seven years," and mandates that the period of suspension from the practice of law for a conviction of a class B felony shall be "not less than five years." Section 51-91a is written in terms of felonies as classified in Connecticut. Although an alphabetical designation of felonies exists in both Connecticut and

the federal system, the prison terms for the classes of felonies vary between the two sentencing authorities.

The trial court here concluded that a suspension was proper. To determine whether the defendant is subject to the mandated terms of suspension of § 51-91a, about which the court would have no discretion, we must first classify the federal felonies as they would be classified under Connecticut law for the purposes of applying § 51-91a. The penalty for a particular crime is directly related to the seriousness of the offense. The greater the term of imprisonment, the more serious the crime. We, therefore, have determined that to equate the A and B felonies of § 51-91a to the federal crime of which the defendant was convicted, we should use, as a conversion factor, the length of imprisonment.[8]

In this case, the crime of which the defendant was convicted was a D felony when it was committed, under federal law. The maximum penalty for a D felony under federal law is six years[9] whereas the maximum penalty

[8] Because bank fraud and the deception involving the Department of Housing and Urban Development are federal in nature, we were unable to equate them with Connecticut crimes. Therefore, in this case, we compare federal and state classifications of crime based on the term of imprisonment.

The only Connecticut case we are aware of that discusses sanctions for the commission of a federal felony is *Statewide Grievance Committee* v. *Shluger*, 230 Conn. 668, 646 A.2d 781 (1994), which involved the crime of filing a false tax return. The issues in *Shluger* related to evidentiary issues and to whether there had been an abuse of discretion by the trial court in the imposition of a sanction. The *Shluger* court did not discuss the applicability of § 51-91a or use the analysis we do. If it had done so, the result of *Shluger* would have been the same because the maximum penalty for the federal offense there was three years, a class D felony, in terms of the length of the maximum punishment, under either Connecticut or federal law.

[9] Title 18 of the United States Code § 3581, which classifies federal crimes and designates the length of sentence terms for each class, provides in relevant part: "(b) The authorized terms of imprisonment are—

"(1) for a Class A felony, the duration of the defendant's life or any period of time;

"(2) for a Class B felony, not more than twenty-five years;

"(3) for a Class C felony, not more than twelve years;

"(4) for a Class D felony, not more than six years. . . ."

for a D felony under Connecticut law is five years.[10] In Connecticut, the penalty, with some exceptions, for a B felony is from one to twenty years imprisonment, and for a C felony, with some exceptions, from one to ten years imprisonment. We need not determine, however, which classification, A, B, C, or D, the defendant's crime would have been in Connecticut at the time of its commission, because that date does not control our comparison of Connecticut A and B felonies with the federal crimes of which the defendant was convicted. On August 9, 1989, the penalty for the crime committed by the defendant was raised from a fine of $10,000 to $1,000,000 and from a term of imprisonment of not more than five years to a term of imprisonment of not more than thirty years.

The defendant committed the crime between February, 1988, and May, 1989, and his presentment by the committee was dated August 23, 1995. As of the date of the presentment, the maximum punishment was thirty years.

Courts considering sanctions against attorneys measure the defendant's conduct against rules of professional conduct. The professional conduct of attorneys in Connecticut is governed by the Rules of Professional Conduct, as found in the Practice Book.[11] Although Connecticut's Rules of Professional Conduct delineate what is improper conduct, they do not provide guidance for what sanctions are appropriate for the particular conduct. For this reason, Connecticut courts reviewing

---

[10] Felony classifications in Connecticut are governed by General Statutes § 53a-35 (b), which provides in relevant part: "(1) For a class A felony, life imprisonment; (2) for a class B felony, a term not to exceed twenty years; (3) for a class C felony, a term not to exceed ten years; (4) for a class D felony, a term not to exceed five years . . . ."

[11] The Rules of Professional Conduct were adopted by the judges of the Superior Court on October 1, 1986, and replaced the Code of Professional Responsibility as the authority in Connecticut for attorney conduct.

attorney misconduct have looked to the American Bar Association's Standards for Imposing Lawyer Sanctions (Standards), which do provide guidance as to what disciplinary sanctions are appropriate. The Standards, which were officially promulgated in 1986, have not been officially adopted in Connecticut. They are, however, used frequently by the Superior Court in evaluating attorney misconduct and in determining discipline, as they were by the trial court in this case. See *Statewide Grievance Committee* v. *Shluger*, supra, 230 Conn. 673 n.10.

"In imposing a sanction after a finding of misconduct, a court should consider the following factors: (a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." Standard 3.0. The Standards define aggravation[12] and mitigation,[13] and provide examples of the

---

[12] Standard 9.2, Aggravation, provides: "9.21 Definition. Aggravation or aggravating circumstances are any considerations, or factors that may justify an increase in the degree of discipline to be imposed.

"9.22 Factors which may be considered in aggravation. Aggravating factors include: (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; (j) indifference to making restitution; (k) illegal conduct, including that involving use of controlled substances."

[13] Standard 9.3, Mitigation, provides in relevant part: "9.31 Definition. Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

"9.32 Factors which may be considered in mitigation. Mitigating factors include: (a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation; (h) physical disability; (i) mental disability or chemical dependency

factors of each. Some of the aggravating factors involve events that occur after conviction, such as subsequent misconduct, bad faith obstruction of the disciplinary proceeding, the submission of false evidence or other deceptive practice during the disciplinary proceeding, the refusal to acknowledge the wrongful nature of the conduct that is the subject of the presentment, and the indifference to restitution. Some of the mitigating factors also relate to events subsequent to the conduct that caused the disciplinary hearing. These include a timely good faith effort to make restitution or to rectify the consequences of the misconduct, whether there has been a full disclosure or cooperative attitude toward the proceedings, and whether there is remorse.

The purpose of the discipline of attorneys is not to punish the offender but to safeguard the administration of justice and protect the public. *Statewide Grievance Committee* v. *Shluger*, supra, 230 Conn. 675; *Statewide Grievance Committee* v. *Botwick*, 226 Conn. 299, 307, 627 A.2d 901 (1993).

Because the presentment hearing takes into account mitigating and aggravating factors, which may have occurred after the actual conduct involved in the presentment, the date of the presentment is the critical date for determining whether the defendant is worthy of practicing law. We, therefore, conclude that its date governs the classification of the felony for the purposes of § 51-91a.

No constitutional deprivation occurs from the application of the statute in this manner because no statute or rule is being applied retroactively. The punishment for a crime is not being enhanced or changed in any way. The purpose of a presentment is unrelated to the

including alcoholism or drug abuse . . . (j) delay in disciplinary proceedings; (k) imposition of other penalties or sanctions; (l) remorse; (m) remoteness of prior offenses."

punishment for the crime itself, which punishment has already been imposed. Rather, the purpose of a presentment is to protect the public and to weigh the ethical and moral qualifications of an attorney to continue to practice law as of the time of a presentment.

At the time of the presentment in this case, the crime that the defendant had committed carried a punishment in excess of twenty-five years, and would have been a class B felony in Connecticut. Pursuant to § 51-91a, the trial court had no discretion to impose the sanction it did, but was bound to impose a sanction of suspension from the practice of law for at least five years.[14]

The judgment of suspension of the practice of law for a period of six months is reversed and the case is remanded for a new hearing limited to a determination of the appropriate period of suspension from the practice of law, which cannot be less than five years.

In this opinion SCHALLER, J., concurred.

SPEAR, J., concurring and dissenting. I concur in the majority's reversal of the trial court's judgment, because I conclude that the trial court abused its discretion. I do not agree that General Statutes § 51-91a applies and, therefore, dissent from the remand ordering the trial court to impose at least the minimum period of suspension dictated by the statute. The trial court might well conclude that a suspension of five years (or more) is warranted. I view the length of the suspension period as a function of the court's discretion and not the result of a statutory mandate.

---

[14] We do not need to reach the claim that the court did not discipline the defendant because of his admission at the presentment hearing that he had made certain misrepresentations in federal court because we remand the case for a new hearing. The issue may arise during that hearing as an aggravating factor in the determination of an appropriate length of suspension. See Standard 9.2.

I view § 51-91a as inapplicable because, on its face, it addresses only convictions of A and B felonies. As the majority opinion points out, General Statutes § 53a-35 (b) provides a maximum penalty of life imprisonment for a class A felony and a term not to exceed twenty years for a class B felony. A class D felony carries a maximum term of imprisonment of five years. Section 51-91a (c) provides in relevant part: "If the court suspends the attorney, the period of suspension shall be not less than seven years for conviction of a class A felony and not less than five years for conviction of a class B felony."

The defendant was convicted of a federal felony that carried a maximum term of imprisonment of five years or a fine of $10,000 or both. Because § 51-91a speaks in terms of the felony of which a defendant is *convicted*, I do not believe that the increase in the penalty for federal bank fraud that took effect after the defendant's crime "converts" the conviction to one that is equivalent to a class B felony. The defendant simply was not convicted of a crime that was a class B felony in Connecticut.[1]

The proper standard of review is whether the trial court abused its discretion in imposing a period of suspension of six months under the circumstances here. A trial court has wide discretion in the imposition of sanctions and is subject to reversal only upon an abuse of discretion. See *In re Application of Pagano*, 207 Conn. 336, 345, 541 A.2d 104 (1988). This court will, however, interfere with the court's exercise of discretion " 'in a case of manifest abuse and where injustice appears to have been done.' " *Grievance Committee* v. *Nevas*, 139 Conn. 660, 666, 96 A.2d 802 (1953). I believe

---

[1] Because I conclude that § 51-91a does not apply to the circumstances here, there is no need to discuss whether the application of that statute would impinge on the court's authority over the discipline of attorneys.

that this matter represents that rare case where a reversal is warranted for abuse of the trial court's discretion.

"[O]f paramount importance in attorney disciplinary matters is the protection of the court, the profession of the law and of the public against offenses of attorneys which involve their character, integrity and professional standing." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Shluger*, 230 Conn. 668, 681, 646 A.2d 781 (1994). Our Supreme Court has recognized that "[a]lthough our review of grievance proceedings is restricted . . . [w]e have a continuing duty to make it entirely clear that the standards of conduct . . . will be applied under our rules of law . . . ." (Internal quotation marks omitted.) Id., 679.

" 'An attorney at law admitted to practice, and in the exercise of the right thus conferred to act as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. As important as it is that an attorney be competent to deal with the oftentimes intricate matters which may be entrusted to him, it is infinitely more so that he be upright and trustworthy.' " *In re Application of Pagano*, supra, 207 Conn. 345.

Our Supreme Court has held that, in determining the appropriate means of discipline, our courts should inquire "whether the conduct is so indicative of moral unfitness for a member of the profession as to justify

displacement as well as exclusion from the bar." *Grievance Committee* v. *Broder*, 112 Conn. 269, 273, 152 A. 292 (1930). The trial court dismissed the complaint against Broder that sought his disbarment for an adultery conviction because it found that Broder's conduct was unrelated to his professional conduct. The Supreme Court reversed the trial court's judgment, concluding that it abused its discretion by failing to disbar Broder. In so holding, the court stated: "[T]he determination of whether the trial judge exercised his discretion unreasonably is dependent upon the conclusion that the conviction . . . is indicative of such moral unfitness as to justify his dismissal from the bar. The seriousness of the crime of adultery in the legislative mind is evidenced in the statutory penalty [of imprisonment up to five years]." Id., 274. Here, the defendant was convicted of bank fraud, a crime that the Congress considered serious enough to carry a penalty of up to five years imprisonment and certainly indicates dishonesty and unfitness to practice law.

"It goes without saying that the term abuse of discretion does not imply a bad motive or wrong purpose but merely means that the ruling appears to have been made on untenable grounds . . . ." (Internal quotation marks omitted.) *Maluszewski* v. *Allstate Ins. Co.*, 34 Conn. App. 27, 38, 640 A.2d 129, cert. denied, 229 Conn. 921, 642 A.2d 1214 (1994). "Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . The salient inquiry is whether the court could have reasonably concluded as it did." (Internal quotation marks omitted.) *Halloran* v. *North Canaan*, 32 Conn. App. 611, 614, 630 A.2d 145 (1993).

I believe that the trial court's decision was made on untenable grounds, and it could not reasonably have concluded as it did for the following reasons. The court made reference to the "Standards for Imposing Lawyer

Sanctions" adopted by the American Bar Association, but clearly failed to give due consideration to those standards that bear on the defendant's crime. The introduction to Standard 5.0 states: "The most fundamental duty which a lawyer owes the public is the duty to maintain the standards of personal integrity upon which the community relies. The public expects the lawyer to be honest and to abide by the law; public confidence in the integrity of officers of the court is undermined when lawyers engage in illegal conduct." Indeed, Standard 5.11 goes on to state in relevant part that "[d]isbarment is generally appropriate when: (a) a lawyer engages in serious criminal conduct a necessary element of which includes . . . misrepresentation, fraud . . . or (b) . . . any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." Certainly the bank fraud of which the defendant was convicted constitutes serious criminal conduct involving fraud and deceit that reflect adversely on the defendant's fitness to practice.

Furthermore, the court does not discuss the particularly disturbing fact that the defendant regularly defrauded and deceived his own client through a continuing fraudulent scheme. Although the defendant pleaded guilty to one count of bank fraud, it was clear that the improper conduct continued over several months and involved a number of transactions. The court also failed to address the defendant's concession that he made misrepresentations as to what he actually knew about the transactions to the federal court in order to obtain a favorable plea bargain.

Where the underlying conviction is of such a grave nature, indicating fraudulent and dishonest behavior, such factors in mitigation,[2] as the trial court discussed,

---

[2] Those factors are the terminal illness of the defendant's wife during the time that the offenses were committed, the responsibility of caring for his

provide relatively little counterweight to the aggravating factors inherent in the criminal conduct. Courts in other jurisdictions have held that, where a lawyer has engaged in continuing and prolonged involvement in a crime, where the crime clearly involves dishonesty, deceit and a contempt for the law, and where the crime is committed in the course of the practice of law, severe discipline is warranted. See *Matter of Brewster*, 587 A.2d 1067 (Del. 1991) (holding disbarment appropriate discipline where lawyer convicted in federal court of bank fraud pursuant to 18 U.S.C. § 1344 [a] [2]); *Matter of Giordano*, 123 N.J. 362, 587 A.2d 1245 (1991) (holding three year suspension appropriate where lawyer convicted of attempting to tamper with public records; conviction of such crime would ordinarily warrant disbarment, but court imposed lesser sanction as result of numerous mitigating factors); *Matter of Goldberg*, 105 N.J. 278, 520 A.2d 1147 (1987) (holding disbarment appropriate where lawyer convicted of serious felony drug charges despite existence of several mitigating factors).

"Inappropriate sanctions can undermine the goals of lawyer discipline: sanctions which are too lenient fail to adequately deter misconduct and thus lower public confidence in the profession . . . ." Standards, preface p. 1. I would reverse the judgment of the trial court because the defendant's conduct bears directly on his fitness to be a lawyer and warrants harsher discipline than a six month suspension. Because the plaintiff sought only a suspension for a suitable period of time and not disbarment, I would remand the case to the trial court for the imposition of a period of suspension commensurate with the gravity of the criminal conduct of the defendant.

---

young son during his wife's illness and a burgeoning litigation practice that was beginning to overwhelm the defendant.