[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
The Statewide Grievance Committee (hereinafter, the Committee) has filed the instant action seeking disciplinary action, pursuant to Practice Book Section 31(a),[1] against the respondent, Samuel Broque, for actions involving a loan between Mr. Broque and his former client, the complainant, Mary Lou Sciola. The Committee alleged and, the facts indicate, that after the successful completion of certain litigation between the complainant and a Dr. Shernow,[2] the respondent requested a loan from the complainant. While the testimony is somewhat contradictory, there is no dispute that the respondent appeared at the complainant's home, uninvited, in the morning (either 8:00 or 9:00) of July 12, 1993 and asked for a loan. In the afternoon, the complainant, accompanied by Mr. Broque, went to her bank and withdrew $10,000 which she gave to Mr. Broque. The respondent had prepared a promissory note which called for four equal installments of $2,500, the second payment being due in one year, the third six months thereafter, and the fourth six months after that. There was no provision for the first payment and the note was interest free for two years with an interest rate of six (6%) percent per annum thereafter. The note also states:
 This note is made personally, and is not a commercial loan as may otherwise be provided for under the laws of the State of Connecticut for commercial loans. This note is subject to all offsets and personal defenses of the maker, and no third party is or shall be construed to have induced this loan nor guaranteed its repayment. No action shall be commenced without the holder providing the maker with notice of intention to initiate an action, and not earlier than thirty (30) days prior to the institution of the said action.
The note includes no provision for attorneys fees or costs of collection; the note is not secured. The parties disagree over whether Mr. Broque advised his client to have another attorney review the note.
Ten days after this incident, Attorney Broque sent a letter to Ms. Sciola requesting a retainer for legal work, at a rate of $125 per hour for four matters. Mr. Broque requested that Ms. Sciola pay $8,500 and also indicated that he would be sending her a bill for time spent over the prior four years on other work. His letter stated, in part: CT Page 10131
 I will also be sending you my bill for the time spent over the past few years advising you as your lawyer in a number of matters, partially including some of the above matters. As the time records are spread out over a long period, and some may be archived, I won't have this ready for a few days, I suspect. You said that your circumstances do not allow you to make gifts from your settlement in the Sciola v. Shernow case, and my circumstances do not allow me to make a present of the time I have expended either. I am sure you will understand how this works.
Two days thereafter Mr. Broque submitted what he called a "generalized" bill for services rendered in the amount of $15,550.00.[3]
Apparently Ms. Sciola did not make any payments on the this bill and Mr. Broque never made any payments on the loan. He filed bankruptcy thereafter and Ms. Sciola objected to the discharge of his $10,000 debt. The parties compromised the claim for $3,000. The Committee has filed this action alleging that Mr. Broque violated Rule 1.8(a) of the Rules of Professional Conduct[4] by entering into a loan transaction with his client without advising her to seek the advice of independent counsel. This court scheduled a hearing on the presentment for February 5, 1997 and as the respondent failed to appear to contest the matter, the court adopted the Committee's recommendation for suspension and suspended Mr. Broque for a period of twenty four months from publication on February 18, 1997. On March 21, 1997, counsel filed an appearance for Mr. Broque and on April 7, 1997, Mr. Broque filed a motion to reopen the judgment. The Committee consented to the motion and the motion was granted on May 19, 1997. A hearing was then scheduled and as the parties failed to show, the prior order was reinstated. The parties sought a further hearing and, agreed, due to Mr. Broque's employment overseas, that his deposition could be used by this court.
 II A
As previously mentioned, the Committee filed this presentment alleging that Mr. Broque was guilty of misconduct by failing to advise his client to seek the advice of independent counsel in connection with the loan that he was requesting she CT Page 10132 make to him. While there is a general prohibition against entering into a business transaction with a client, the Rule does allow such undertakings if there is an appropriate disclosure.[5]
During the argument, this court was told by the respondent's counsel that due to the discrepancies in the stories of the parties and the complainant's "obvious greed," she should be deemed to not be credible. That argument, however, misses the point. Mr. Broque admits that he requested the loan and that he prepared the loan document. This court's review of the event, including the loan document and the two letters, indicates that there is no way that the transaction can be found to be fair and reasonable. Certainly there is no evidence that Mr. Broque advised her in writing to seek the advice of other counsel. Obviously there is no written consent by Ms. Sciola. All three subsections of Rule 1.8(a) have been violated.
This court notes that the presentment was based only on a claim that the respondent failed to advise Ms. Sciola in writing to seek the advice of independent counsel. See Rule 1.8(a)(2). This court, however, as noted by both parties, has the authority to make broader findings if the evidence so warrants. SeeGrievance Committee v. Goldfarb, 9 Conn. App. 464, 474, cert. denied, 203 Conn. 802 (1987).
 B.
An attorney as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. . . . Therefore, [i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession. (Citation omitted; internal quotation marks omitted.) Doe v. Statewide Grievance Committee,240 Conn. 671, 684-85, ___ A.2d ___ (1997) citing Massameno v.CT Page 10133Statewide Grievance Committee, 234 Conn. 539, 554-55,663 A.2d 317 (1995).
As noted recently by the Appellate Court in StatewideGrievance Committee v. Spirer, 46 Conn. App. 450, 463-465 (1997), even though the Superior Court judges have not formally adopted the American Bar Association's Standards for Imposing Lawyer Sanctions, individual judges, including this court, have utilized the Standards in evaluating attorney misconduct and in determining appropriate discipline. Id. See, StatewideGrievance Committee v. Shluger, 230 Conn. 668, 673 n. 10 (1994). Section 3.0 of the Standards states that "[i]n imposing a sanction after a finding of lawyer misconduct, a court should consider the following factors: (a) the duty violated; (b) the lawyer's mental state; and (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." At Section 9.0, the Standards state that "after misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose."[6]
Turning to the aggravating factors first, while this court has received no evidence concerning a prior disciplinary offense or a pattern of misconduct or multiple offenses, it has heard about a selfish — bordering on dishonest — motive, a refusal to acknowledge the wrongful nature of the conduct, a vulnerability of a victim and, even with the bankruptcy and its settlement, an indifference to making restitution. It was Mr. Broque who appeared uninvited at Ms. Sciola's door one morning asking for a loan, with a promissory note that he prepared and without complying with Rule 1.8(a). Further, there was never any attempt to make any payments. It was surely not a coincidence that within two weeks after signing the note Mr. Broque sent both his first letter seeking the retainer and then a $15,550 bill which provides virtually no explanation or back up. In his deposition, Mr. Broque stated that this loan "was the only claim I was required to compromise." The record certainly suggests (and was actually confirmed by counsel at oral argument) that Mr. Broque felt that he could seek the loan because he (and others) had been so successful on Ms. Sciola's behalf.
The mitigating factors do not necessarily come to his aid as this court has found a selfish motive, no timely good faith effort to make restitution, and, at least as argued to this court, certainly no remorse. Yet, it is true that he did not CT Page 10134 have a prior disciplinary record and that he testified that he had personal problems. Indeed, his lawyer characterized the actions as those of a "desperate attorney who was broke and getting divorced." Mr. Broque stated it was an "act of financial panic" and that "I pressed my client for a loan, and if I were prudent and if I had not panicked and if I had not been in financially miserable shape, I would not have done that. . . ." This court believes the mitigating factors are surely outweighed by the aggravating factors.
Returning to Section 3.0, it is clear that the prohibitions of Rule 1.8(a) were violated, and that a client lost money as a result of the violation. The troubling part of this whole incident is that Mr. Broque has failed to understand that what occurred was wrong.
"[O]f paramount importance in attorney disciplinary matters is the protection of the court, the profession of the law and of the public against offenses of attorneys which involve their character, integrity and professional standing." (Internal quotation marks omitted.) Statewide Grievance Committee v.Spirer, supra, 46 Conn. App. 468 citing Statewide GrievanceCommittee v. Shluger, 230 Conn. 668, 681, 646 A.2d 781 (1994). In this case a suspension is warranted and appropriate. Accordingly, the prior orders of this court setting aside the suspension are vacated and a suspension of one year is imposed.
Marshall K. Berger, Jr., J.