I. INTRODUCTION AND FACTUAL BACKGROUND CT Page 12870
The plaintiff, Sydney T. Schulman d/b/a Law Offices of Sydney T. Schulman, commenced the present action against the defendants, Major Help Services ("Major Help") and its president and agent Stuart Grant alleging that they breached a December 1995 contract in which the plaintiff would pay an $11,000 membership fee and the defendant would purchase advertising space on local television networks and would refer personal injury leads to the plaintiff. Major Help guaranteed that the plaintiff would receive a minimum of eight personal injury referrals every month and that if Major Help failed to provide the minimum number of leads for any given month, the contract would be renewed for an additional six month period without additional cost to the plaintiff. The contract also provided that if, after the extension, Major Help's efforts still failed to yield the amount of leads contracted for, then the plaintiff's money would be refunded on a pro-rata basis.
The plaintiff maintains that, despite payment of the $11,000, he did not receive the minimum number of leads as guaranteed in the agreement during any month in which the contract was in force or any extension thereof. Subsequently, although the plaintiff notified Major Help of the shortfall and requested the return of the pro-rata portion of the fees, Major Help failed to return such fees or to answer the plaintiff's letters and telephone calls.
This action was brought on March 17, 1997, and on May 6, 1997, the plaintiff's motion for default for failure to appear was granted. The matter now comes before this court as a hearing in damages. Ordinarily, the only issue at such a hearing is the amount of damages. Practice Book § 364 (a) provides that, "[i]f a defendant is defaulted for failure to appear for trial, evidence may be introduced and judgment rendered without notice to the defendant." "The result of an entry of a default for failure to appear is that liability is conclusively presumed . . . . Therefore, [a] plaintiff [is] relieved of any obligation to prove the allegations of the complaint except as to the damages." (Citations omitted.)Carothers v. Butkin Precision, 37 Conn. App. 208, 209 (1995). See People's Bank v. Horesco, 205 Conn. 319, 321, 533 A.2d 850
(1987) (in light of the defendant's failure to appear the "entry of a default and the rendition of immediate judgment was in order"). CT Page 12871
This court, however, cannot follow the normal path of review. The plaintiff's claim raises certain ethical problems that must be addressed by this court.
II. DISCUSSION
 A.
A lawyer may advertise his or her services through public media such as radio, television, newspapers or telephone directory provided that the advertisement complies with the mandates set forth in the Connecticut Rules of Professional Conduct. Connecticut Rules of Professional Conduct 7.2 (a). Section 7.2 (c), however, provides that "[a] lawyer shall not give anything of value to a person for recommending the lawyer's services, except that a lawyer may pay the reasonable cost of advertisements or communications permitted by this Rule and may pay the usual charges of a not-for-profit lawyer referral service or other legal service organization." Id.
The Connecticut Bar Association Committee on Professional Ethics has previously ruled that the Rules of Professional Conduct would not be violated where an attorney participates in an advertising program in which the attorney pays an advertising agency to join a program featuring television advertisements coupled with an answering service to answer telephone calls from prospective clients. The answering service, however, may merely forward the name, address and telephone number of the caller to the participating attorney without any further involvement in the process. See Connecticut Bar Association Committee on Professional Ethics, Informal Opinion No. 14 (1990). Such practice is improper if the actual advertisement could be construed by the caller as an endorsement or recommendation by the answering service of a particular lawyer. "Recommendations ought to be based on one's reputation, not on the recommenders concealed financial interest in the creation of an attorney-client relationship. Allowing the purchase of recommendations would be the functional equivalent of permitting the purchase of reputations, which would be grossly misleading to the public and inherently wrong." Id.
Informal Opinion No. 14 ruled that an advertising effort between an attorney and a third party is permissible if the third party performs merely a ministerial function in CT Page 12872 connecting the attorney with the prospective clients. In the present case, however, the contract entered into by the plaintiff and Major Help, required a $2,000 monthly payment with a start up fee of $1,000 for a total of $13,000. There is absolutely no reference to the cost, method or specifics of the advertising. In its advertisements directed at enrolling attorneys in the program, Major Help states that it will provide only "qualified" leads and that it will "follow up to insure that appointments are kept" and that it will "directly connect the qualified clients `live' into [the attorney's] office." (Plaintiff's Exhibit 1.) It is clear that the role of Major Help in such plan goes beyond the limited function of a telephone operator providing a caller with the name of a participating attorney. This court cannot possibly conclude that the payments are for the "reasonable cost of advertising, or written communication". Rather, the arrangement is a procedure through which a participating attorney pays a third party a sum surely in excess of the cost of advertising involved in exchange for the third party's recommendations. This violates Connecticut Rules of Professional Conduct, Rule 7.2 (c). See also Connecticut Bar Association Committee on Professional Ethics, Informal Opinion No. 23 (October 5, 1990) (holding that, in the Committee's opinion, a plan involving more than just a ministerial function by the referring organization violates Rule 7.2 (c)). While entering into a contract prohibited by the Rules, is not illegal, it offends the public policy of ensuring ethical conduct by attorneys embodied in the Rules.
 B.
Public policy is defined not only by constitutions, statutes and applicable legal precedents, but also by "a plain indication . . . through long governmental practice . . . of violations of obvious ethical or moral standards. . . ." Cityof Bridgeport v. Police Department Employees Local 1159,
Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 281769 (May 16, 1994) (Spear, J.), citing Muscanyv. United States, 324 U.S. 49, 66, 655 Ct. 442, 89 L.Ed. 744
(1944). Conduct is violative of public policy if "it is within at least the penumbra of some common law, statutory or other established concept of unfairness . . ." Conaway v.Prestia, 191 Conn. 484, 492-93, 464 A.2d 847 (1983).
Connecticut has the strong public policy of ensuring that CT Page 12873 lawyers act ethically in dealing with the public. See, e.g.,Statewide Grievance Committee v. Glass, 46 Conn. App. 472
(1997); Statewide Grievance Committee v. Spirer,46 Conn. App. 450 (1997); Doe v. StatewideGrievance Committee, 240 Conn. 671 (1997). To ensure that this public policy is fulfilled, "a comprehensive disciplinary scheme has been established to safeguard the administration of justice, and designed to preserve public confidence in the system and to protect the public and the courts from unfit practitioners." Massameno v. StatewideGrievance Committee, 234 Conn. 539, 554, 663 A.2d 317 (1995). The Rules of Professional Conduct, promulgated by the court under its rule making authority to govern the ethical conduct of attorneys, therefore, are an integral part of this scheme and create the framework on which the court can fulfill this responsibility. Statewide Grievance Committee v. Robziki,211 Conn. 232, 239, 558 A.2d 986 (1989). Rule 7.2, for example, is designed to protect the public by reducing the potential risk of misleading or overreaching practices inherent in advertising by attorneys. See Rules of Professional Conduct, Rule 7.2, comment.
Not only are the Rules of Professional Conduct intended to implement a policy to protect the public from certain attorneys, Statewide Grievance Committee v. Spirer, supra,46 Conn. App. 459; but also they "exist within the broader framework of the relationship between attorneys and the judiciary." Massameno v. Statewide Grievance Committee, supra,234 Conn. 554. "The important public policy involved is to protect the integrity of the court." Field v. Kearns,43 Conn. App. 265, 274, 682 A.2d 148 (1996).
Since the contract in this case violates Rule 7.2, the plaintiff's conduct, in violating the Rules of Professional Conduct, contravenes public policy. See, e.g., Ghent v.Zoning Commission, 220 Conn. 584, 594, 600 A.2d 1010 (1991) (holding that "[a]nything which tends to weaken [public] confidence and to undermine the sense of security . . . which the citizen is entitled to feel is against public policy.").
 C.
It is a firmly entrenched principle of contract law that the courts will not enforce the parties' agreement where to do so would violate principles of public policy. Silver v.CT Page 12874Jacobs, 43 Conn. App. 184, 189, 682 A.2d 551 (1996); KonoverDevelopment Corp. v. Zeller, 228 Conn. 206, 231, 635 A.2d 798
(1994); McCarthy v. Santangelo, 137 Conn. 410, 412,78 A.2d 240 (1951). As stated in Meade v. Pongonis, Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 263416,4 CONN. L. RPTR. 313 (July 11, 1991, Katz, J.), the doctrine "that a court may refuse to enforce contracts that violate . . . public policy . . . derives from the basic notion that no court will lend its aid to one who founds a cause of action upon an immoral or illegal act, and is further justified by the observation that the public's interest in confining the scope of private agreements to which it is not a party will go unrepresented unless the judiciary takes account of those interests when it considers whether to enforce such agreements. . . . In the common law of contracts, this doctrine has served as the judicial foundation for occasional exercises of judicial power to abrogate private agreements." (Citations omitted.) Id., citing United Paperworkers Int'l v.Misco, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). In Freccia and Plotkin v. Castro, Superior Court, judicial district of Stamford, Docket No. 151637, 17 CONN. L. RPTR. 555 (September 9, 1996) (D'Andrea, J.), the court refused to allow an attorney to recover fees based upon an agreement which violated Rule 1.5 of the Rules of Professional Conduct on the grounds that such agreement violated public policy.
For the above reasons therefore, even though this case is before the court as a hearing on damages with liability seemingly rendered, this court refuses to enforce the contract. Judgment enters for the defendant. No costs are imposed.
Berger, J.