WILLIAM L. ANKERMAN *v.* JACK C. MANCUSO
(AC 23369)

Lavery, C. J., and DiPentima and McLachlan, Js.

Argued June 9—officially released September 16, 2003

*William L. Ankerman,* pro se, the appellant (plaintiff).

*James Colin Mulholland,* for the appellee (defendant).

*Opinion*

DiPENTIMA, J. The plaintiff, William L. Ankerman, appeals from the judgment rendered in favor of the defendant, Jack C. Mancuso. The issue before this court is whether the plaintiff's violation of the Rules of Professional Conduct is a legally sufficient special defense that bars the enforcement of a promissory note and mortgage held by the plaintiff and signed by the defendant. The trial court found that it was. We disagree and reverse the judgment of the trial court.

The following facts and procedural history are pertinent to the plaintiff's appeal. At all times relevant to the action, the plaintiff was an attorney licensed to practice law in Connecticut. The defendant was a client of the plaintiff from October 6, 1988, until August 12, 1991. The plaintiff brought his action to enforce a note executed by the defendant on July 24, 1990, and claimed principal due of $6218.81 with accrued interest and costs totaling $18,834.98 as of the date of trial. Although the face amount of the note is $50,000, the note specifically provided that the actual amount payable was $6218.81 with interest based on attorney's fees owed as of June 4, 1990. The note was accompanied by a mortgage and provided that the plaintiff could seek to enforce the note if title to the mortgaged property was transferred. The mortgage is on property at 17-19 Keller Avenue in Enfield. At the time that the note and mort-

gage were drafted, the plaintiff sent a letter to the defendant, encouraging him to consult another attorney regarding the note and mortgage. Although the defendant returned the executed note and mortgage along with the recording fee to the plaintiff in August, 1990, the plaintiff did not record the mortgage until June 10, 1991, the same day the plaintiff's motion to withdraw as the defendant's counsel appeared on the court's short calendar.

While the note and mortgage were being executed, the plaintiff was representing the defendant in an appeal from a judgment concerning the Keller Avenue property. The appeal challenged the trial court's judgment ordering the defendant to deed one-half interest in the property to Kim Dorsey.[1] See *Dorsey* v. *Mancuso*, 23 Conn. App. 629, 583 A.2d 646 (1990), cert. denied, 217 Conn. 809, 585 A.2d 1234 (1991). Dorsey cross appealed, claiming entitlement to full title. In December, 1990, this court reversed the judgment, remanded the case to the trial court and ordered that judgment be rendered transferring full title to Dorsey. Id., 635–36. At the time of this trial, despite the rescript in that case, the defendant continued to own the Keller Avenue property. One month after the plaintiff ceased representing the defendant, the defendant wrote a letter to the plaintiff, demanding the removal of the mortgage, but the mortgage remained on the property as a second mortgage.

On February 25, 1997, the plaintiff brought his action in a single count complaint. The defendant filed several special defenses and a two count counterclaim.[2] The

[1] In *Dorsey* v. *Mancuso*, 23 Conn. App. 629, 583 A.2d 646 (1990), cert. denied, 217 Conn. 809, 585 A.2d 1234 (1991), the court provides an illuminating account of the history of the defendant's interest in 17-19 Keller Avenue in Enfield.

[2] The defendant alleged five special defenses: (1) the taking of the note and mortgage is unenforceable due to an ethical violation; (2) the plaintiff's mortgage is a second mortgage and is not enforceable because the plaintiff is not licensed to operate as a secondary mortgage lender; (3) the note is not supported by consideration; (4) the note is voidable pursuant to truth

case proceeded to trial, and the court issued an oral decision in favor of the defendant on the complaint and in favor of the plaintiff on the counterclaim. The court found that the defendant had not paid the plaintiff the $6218.81 incurred for legal services rendered. The court then turned to the first special defense, which alleged a violation of rule 1.8 of the Rules of Professional Conduct[3] as a bar to the enforcement of the note and mortgage, and found that the plaintiff had violated the ethical rule by taking a note secured by a mortgage on property that was the subject of the appeal he was prosecuting on the defendant's behalf.

The court concluded that the plaintiff had violated rule 1.8 and the public policy underlying that rule. The court noted that the underlying public policy stems from the courts' disapproval of champerty and maintenance, and "an attempt to avoid unnecessary conflicts of interest between attorneys and clients. The possibility of an adverse effect upon the exercise of free judgment by a lawyer on behalf of his client during litigation generally makes it undesirable for the lawyer to acquire a proprietary interest in the outcome of the litigation . . . ." The court further relied on *Schulman* v. *Major Help Center*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 569027 (December 24, 1997) (21 Conn. L. Rptr. 1), in which the court stated that it is Connecticut's public policy to protect the public and

---

in lending laws; and (5) the taking of the loan is unconscionable. The defendant, further, asserted a two count counterclaim: (1) the plaintiff violated the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.; and (2) the mortgage is a slander on the defendant's title.

[3] Rule 1.8 (j) of the Rules of Professional Conduct provides: "A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:

"(1) Acquire a lien granted by law to secure the lawyer's fee or expenses; and

"(2) Contract with a client for a reasonable contingent fee in a civil case."

judicial integrity by requiring attorneys to act ethically. The court, therefore, would not enforce the note and mortgage, which it found violated public policy. This appeal followed.

## I

The plaintiff first claims that the court improperly held that a violation of the Rules of Professional Conduct, which occurred six years earlier, was legally sufficient to prevent the enforcement of a promissory note and the accompanying mortgage. He asserts, rather, that a violation of an ethical rule does not, by itself, form the basis for civil liability or augment any substantive legal duty of attorneys.[4] Therefore, we address whether a violation of the Rules of Professional Conduct is legally sufficient to preclude the enforcement of the note and mortgage on the defendant's property. We conclude that it is not.

We first set forth the applicable standard of review. "The trial court's legal conclusions are subject to plenary review. [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision." (Internal quotation marks omitted.) *Roach* v. *Ivari International Centers, Inc.*, 77 Conn. App. 93, 99, 822 A.2d 316 (2003).

The court clearly set forth its basis for finding the note and mortgage unenforceable. The court determined that

---

[4] The plaintiff also asserts that an ethical breach did not occur and, even if one had occurred, the defendant's claim relative thereto was "unenforceable," as it was beyond the six year limitation period set forth in Practice Book § 2-32 (2) (E). We agree with the court that Practice Book § 2-32 (2) (E) applies only to complaints filed with the statewide grievance committee and not with the Superior Court. The relevant complaint in this case was filed with the Superior Court. To the extent that the plaintiff's brief does not adequately articulate, much less address, an argument to extend that rule, we decline to explore the issue further.

the note and mortgage were so related as to be one transaction, and that because the mortgage constituted a violation of rule 1.8 (j) of the Rules of Professional Conduct, it would be against public policy to allow enforcement of the note. The court also recognized that the public policy is to protect the public and the judicial process by requiring ethical conduct by lawyers representing clients.

The plaintiff, however, argues that *Noble* v. *Marshall*, 23 Conn. App. 227, 231, 579 A.2d 594 (1990), controls this matter. In *Noble*, we stated: "[T]he Rules of Professional Conduct do not of themselves give rise to a cause of action, even to an attorney's client." Id. In *Gagne* v. *Vaccaro*, 255 Conn. 390, 766 A.2d 416 (2001), our Supreme Court stated: "They are not designed to be a basis for civil liability. . . . The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty." (Internal quotation marks omitted.) Id., 403.

In *Hultman* v. *Blumenthal*, 67 Conn. App. 613, 624, 787 A.2d 666, cert. denied, 259 Conn. 929, 793 A.2d 253 (2002), the plaintiffs argued that the attorney general had a responsibility to adhere to the Rules of Professional Conduct, and that his statements to the media violated the Rules of Professional Conduct concerning trial publicity and statements made outside the courtroom. This court stated, however, that the case was "not a review of a disciplinary hearing or the defendant's conduct as an attorney. The preamble to the Rules of Professional Conduct provides in relevant part that a '[v]iolation of a Rule should not give rise to a cause of

action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability.' " Id., 619–20 n.8; see *Mozzochi* v. *Beck,* 204 Conn. 490, 500–501, 529 A.2d 171 (1987); *Standish* v. *Sotavento Corp.,* 58 Conn. App. 789, 797, 755 A.2d 910, cert. denied, 254 Conn. 935, 761 A.2d 762 (2000); *Leavenworth* v. *Mathes,* 38 Conn. App. 476, 480 n.2, 661 A.2d 632 (1995).

The court, however, relied on *Schulman* v. *Major Help Center,* supra, 21 Conn. L. Rptr. 1. In *Schulman,* the court explained: "It is a firmly entrenched principle of contract law that the courts will not enforce the parties' agreement where to do so would violate principles of public policy . . . [and that doctrine] derives from the basic notion that no court will lend its aid to one who founds a cause of action upon an immoral or illegal act . . . . In the common law of contracts, this doctrine has served as the judicial foundation for occasional exercises of judicial power to abrogate private agreements. . . . [T]he court [has] refused to allow an attorney to recover fees based upon an agreement which violated Rule 1.5 of the Rules of Professional Conduct on the grounds that such agreement violated public policy." (Citations omitted; internal quotation marks omitted.) Id., 2–3.

The plaintiff acknowledges that the *Noble* court held only that the Rules of Professional Conduct cannot form the basis of a cause of action between attorney and client, and that *Noble* did not concern special defenses. It is clear, however, that this logic extends to special defenses. See Rules of Professional Conduct, Scope; *Noble* v. *Marshall,* supra, 23 Conn. App. 231. The public policy underlying rule 1.8 is to prevent conflicts of interest between attorney and client. According to the scope of the Rules of Professional Conduct, the rules are not

designed to augment the attorney's legal duty and are provided to guide disciplinary agencies in regulating attorneys' actions. Furthermore, we are not bound by the *Schulman* court's holding that an ethical violation constitutes a breach of public policy and prohibits the court from enforcing a contract. Because *Noble* still is the precedent in these matters, we follow the rationale of that opinion.

Moreover, we note that an attorney generally is not disciplined "for any but the most obvious, egregious and public misconduct." *Statewide Grievance Committee* v. *Botwick*, 226 Conn. 299, 307, 627 A.2d 901 (1993). The court additionally found that the "[plaintiff's] motive in obtaining the note and mortgage and recording same was to obtain and secure the payment of his legal fees. While the means violated the Rules of Professional Conduct, the motive was not improper or unjustifiable or otherwise malicious . . . ." Although we do not condone violations of the ethical rules governing attorneys, after reviewing *Noble* and the preamble of the Rules of Professional Conduct, and in light of the factual findings of the court, we hold that the violation of rule 1.8 (j) does not bar enforcement of the note.

## II

The plaintiff next claims that the court improperly found that he took an interest in the subject matter of the litigation in violation of rule 1.8 (j) of the Rules of Professional Conduct where the mortgagor did not have a legal interest in the subject premises to convey by mortgage.[5] The plaintiff, however, failed to brief and to explain any part of that weak argument adequately. His

---

[5] As best we can decipher, the plaintiff's argument is that there was a lis pendens on the subject property at the time that the mortgage was executed, and this court's holding in *Dorsey* v. *Mancuso*, supra, 23 Conn. App. 635–36, ordering the transfer of full title of the property to Dorsey related back to the lis pendens. Therefore, he argues, the underlying deed was null and void so that the defendant mortgagor had no interest in the property.

assertions are confusing and without guidance or legal support. "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Mattson* v. *Mattson*, 74 Conn. App. 242, 247, 811 A.2d 256 (2002). The issue is deemed abandoned, and we will not afford it review.

We conclude that under the facts, a violation of rule 1.8 (j) of the Rules of Professional Conduct cannot be the sole basis to bar the enforcement of an otherwise valid promissory note and mortgage.

The judgment is reversed only with respect to the plaintiff's cause of action and the case is remanded with direction to address the defendant's remaining special defenses, numbers two through five. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.