STATEWIDE GRIEVANCE COMMITTEE *v.*
DANIEL B. GLASS
(AC 15212)

Dupont, C. J., and Schaller and Spear, Js.

Argued March 3—officially released August 26, 1997

*Daniel B. Horwitch*, statewide bar counsel, for the appellant (plaintiff).

*William F. Gallagher*, with whom, on the brief, was *Cynthia C. Bott*, for the appellee (defendant).

*Opinion*

DUPONT, C. J. The statewide grievance committee (committee) appeals from the judgment of the trial court ordering a reprimand of the defendant Daniel B. Glass. We affirm the judgment of the trial court.

The relevant facts are those that follow. The defendant was an associate in the law firm of Spirer, Nasser and Marcus in Westport. The firm represented Comfed Savings Bank, Comfed Mortgage Company, and the Swiss Conservative Group (Swiss). Various members of the firm developed a scheme whereby financially distressed homeowners could refinance their homes through what purported to be a sale of the property.

The transactions organized by the defendant's law firm involved situations where a "buyer" who was not a bona fide purchaser, but instead a friend or relative of the "seller," would purport to "buy" the property from the "seller" and would lease the property back to the "seller." Swiss was responsible for providing a "buyer" if the "seller" did not have one ready. Swiss would arrange a new mortgage such that the "buyer's" monthly lease payment would equal the amount of the mortgage payment on the property. The "seller" and the "buyer" would execute four agreements: a contract for the sale of real property, a lease, an option agreement, and a three party agreement between the "seller," the "buyer" and Swiss. The contract of sale, which was the only one of the four agreements that the mortgagee bank was ever given, described the purported sale. The lease arranged for the "buyer" to pay the mortgage as the lease payment. The option agreement gave the "seller" the ability to retain title to the property. Finally, the third party agreement provided for a fee to Swiss equaling 20 percent of the "sale price" of the property. In effect, the mortgagee bank was led to believe that it was lending to a bona fide purchaser, when in fact there was no actual sale being made.

The defendant's firm participated in several transactions of this kind between February, 1988, and May, 1989. The firm was required by the Comfed Savings Bank to fill out a United States Department of Housing

and Urban Development Statement, Form HUD-1 (HUD-1). The defendant, as the closing attorney, certified on this form that the funds shown as distributed were a true and accurate accounting of the transaction.

The defendant's involvement in this scheme was primarily as a closing attorney. He did not prepare any of the HUD-1 forms himself, but he reviewed and signed them, thus certifying that the figures on the forms were accurate, when in fact they were not, and he knew that they were not. When the defendant expressed concern to his superiors about the propriety of the scheme, he was assured that it was legitimate.

The defendant was charged in federal court with the crime of making a false statement in connection with a federal loan application after a residential real estate closing that occurred in February, 1989. On December 29, 1994, the defendant pleaded guilty to one count of violating 18 U.S.C. § 1014, a felony under federal law.[1] The court, Dorsey, J., sua sponte departed from the federal sentencing guidelines, and gave the defendant a reduced sentence due to his cooperation with his own prosecution. He was sentenced to three years probation and to three months of home confinement, and was ordered to perform 300 hours of community service and to make restitution in the amount of $20,000.

---

[1] Title 18 of the United States Code § 1014 provides in relevant part: "Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of . . . a Federal land bank, a Federal land bank association, a Federal Reserve bank . . . any institution the accounts of which are insured by the Federal Deposit Insurance Corporation . . . any Federal home loan bank, the Federal Housing Finance Board, the Federal Deposit Insurance Corporation . . . upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor, shall be fined not more than $1,000,000 or imprisoned not more than 30 years or both."

Subsequently, the committee filed a presentment and petition for interim suspension in the trial court pursuant to Practice Book § 28B.1[2] in order to seek the defendant's suspension from the practice of law. The committee requested a minimum suspension of six months. The trial court, after having heard the evidence before it, did not suspend the defendant, but instead issued a reprimand. The committee then filed this appeal, claiming the sanction was not severe enough.[3]

---

[2] Practice Book § 28B.1, Discipline of Attorneys Convicted of a Felony in Another Jurisdiction, provides in relevant part: "(a) An attorney shall send to the statewide bar counsel written notice of his conviction in any court of the United States, or the District of Columbia, or of any state, territory, commonwealth or possession of the United States of a serious crime as hereinafter defined within ten days of the entry of the judgment of conviction. That written notice shall be sent by certified mail, return receipt requested.

"(b) The term 'conviction' as used herein refers to the disposition of any charge of a serious crime as hereinafter defined resulting from either a plea of guilty or nolo contendere or from a verdict after trial or otherwise, and regardless of the pendency of any appeal.

"(c) The term 'serious crime' as used herein shall mean any felony as defined in the jurisdiction in which the attorney was convicted. . . .

"(e) Upon receipt of the written notice of conviction the statewide bar counsel shall obtain a certified copy of the attorney's judgment of conviction, which certified copy shall be conclusive evidence of the commission of that crime in any disciplinary proceeding instituted against that attorney on the basis of the conviction. Upon receipt of the certified copy of the judgment of conviction, the statewide bar counsel shall file a presentment against the attorney with the superior court in the judicial district wherein the attorney maintains an office for the practice of law in this state . . . . *The sole issue to be decided in the presentment proceeding shall be the extent of the final discipline to be imposed,* provided that the presentment proceeding instituted will not be brought to hearing until all appeals from the conviction are concluded unless the attorney requests that the matter not be deferred. . . ." (Emphasis added.)

[3] The Practice Book provides two procedures for hearing attorney discipline cases. The first method, as provided by § 27F et seq., allows any party to file a grievance with the statewide bar counsel, which is then forwarded to the statewide grievance committee, which holds a hearing. The result of this hearing is appealable in the trial court. Practice Book § 27N (f) provides: "Upon appeal, the court shall not substitute its judgment for that of the statewide grievance committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the committee unless the court finds that substantial rights of the defendant have been prejudiced because

Hearings concerning the eligibility to practice law of attorneys who have been convicted of a felony in Connecticut are governed by General Statutes § 51-91a and Practice Book § 28B.[4] The statute gives the trial court the power to determine, under the circumstances

the committee's findings, inferences, conclusions, or decisions are: (1) In violation of constitutional, Practice Book or statutory provisions; (2) in excess of the authority of the committee; (3) made upon unlawful procedure; (4) affected by other error; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, rescind the action of the statewide grievance committee or take such other action as may be necessary. For purposes of further appeal, the action taken by the superior court hereunder is a final judgment."

The second method is by direct presentment to the trial court. See Practice Book §§ 28B (Discipline of Attorneys Convicted of a Felony), 28B.1, and 31 (Presentments and Unauthorized Practice of Law Petitions), which provide for situations where the attorney has been convicted of a felony in Connecticut, convicted of a felony in another jurisdiction, or has committed other misconduct, respectively. We note that the presentment method is an option to be used alternatively with filing a complaint with the statewide bar counsel when nonfelonious misconduct is involved, but that the presentment method is the mandatory procedural vehicle when the attorney has been convicted of any sort of felony. In this case, because the defendant had been convicted of a felony in another jurisdiction, the committee pursued its complaint by way of presentment to the trial court via § 28B.1.

[4] General Statutes § 51-91a provides: "(a) After sentencing an attorney who has been convicted of a felony, the court shall hold a hearing on the issue of the eligibility of such attorney to continue the practice of law in this state. Such hearing shall be held within thirty days of sentencing or when all appeals from the conviction are concluded, whichever is later, except that the attorney may request that the hearing not be delayed until all appeals are concluded.

"(b) At such hearing, the attorney shall have the right to counsel, to be heard in his own defense, and to present evidence and witnesses in his behalf.

"(c) After such hearing, the court shall enter an order dismissing the matter or imposing discipline upon such attorney in the form of suspension for a period of time, disbarment, *or such other discipline as the court deems appropriate.* If the court suspends the attorney, the period of suspension shall be not less than seven years for conviction of a class A felony and not less than five years for conviction of a class B felony.

"(d) Whenever the court enters an order disciplining an attorney under this section, it may appoint a trustee, under the rules of court, to protect the interests of the disciplined attorney and his clients." (Emphasis added.)

of each case, what sanction is appropriate. Under the statute, an attorney convicted of a felony in Connecticut may be disbarred, suspended, or disciplined in some other manner, at the discretion of the trial court. If suspension is deemed appropriate, the court must suspend for a period of at least seven years for a class A felony and for a period of at least five years for a class B felony. The statute on its face does not apply to attorneys who are convicted of felonies in other jurisdictions, as is the case here.

Practice Book § 28B.1, although recognizing that felonies may be committed and prosecuted in other jurisdictions, does not speak to particular sanctions, but to the procedure for a presentment proceeding to determine the extent of the discipline to be imposed. We have concluded that § 51-91a should be applied to attorneys who commit out-of-state felonies. See *Statewide Grievance Committee* v. *Spirer*, 46 Conn. App. 450, 460, 699 A.2d 1047 (1997). That statute has both precatory and mandatory language. Its mandatory provisions arise only "if the court suspends the attorney," *and* there has been a conviction of a class A or class B felony.[5] Otherwise, the court may dismiss the matter, suspend the attorney for some discretionary period of time if the felony conviction does not involve a class A or B felony, disbar the attorney, or impose such other discipline as the court deems appropriate, at the discretion of the trial court.

In this case, the court did not impose any period of suspension, and we, therefore, conclude that this case does not involve the statutory provision relating to mandatory suspensions. We, therefore, review the court's judgment to determine whether the court abused its

[5] Section 51-91a is clear on its face that the mandated provisions apply only *if* suspension is deemed appropriate. Thus, a trial court may avoid the mandates in some cases by not imposing any period of suspension. This, however, is a situation for the legislature to correct, should it choose to do so.

discretion in this case in ordering a reprimand.[6] Both parties argue in their briefs that this is the standard under which the review should be conducted. On the facts of this case, we agree.

"The trial court ha[s] inherent judicial power, derived from judicial responsibility for the administration of justice, to exercise sound discretion to determine what sanction to impose in light of the entire record before it. . . . Long ago, we stated that courts are, as they should be, left free to act as may in each case seem best in this matter of most important concern to them and to the administration of justice. . . . However, [a]lthough our review of grievance proceedings is restricted, we recognize the seriousness of the interests that we must safeguard. We have a continuing duty to make it entirely clear that the standards of conduct, nonprofessional as well as professional, of the members of the profession of the law in Connecticut have not changed, and that those standards will be applied under our rules of law, in the exercise of reasonable discretion . . . ." (Citations omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Shluger*, 230 Conn. 668, 678–79, 646 A.2d 781 (1994).[7]

---

[6] Practice Book § 28B.1 applies to discipline of attorneys convicted in other jurisdictions but does not mention the possibility of a reprimand, mentioning only suspension or disbarment. It does not, however, preclude the sanction of a reprimand and we do not interpret the section to preclude a reprimand in view of § 51-91a that allows suspension, disbarment, or "other such discipline as the court deems appropriate." It would be incongruous to read § 28B.1 as prohibiting reprimands if a felony conviction occurs outside the state when § 28B (c), which applies to felony convictions within the state, provides the court with discretion to impose "such other discipline as the judge deems appropriate."

[7] The issues in *Shluger* related to evidentiary questions and to whether there had been an abuse of discretion by the trial court. The case, the only case of which we are aware that discusses the appropriate discipline for the commission of a federal felony, involved the crime of filing a false tax return. The court did not consider the use of § 51-91a as governing sanctions for attorneys convicted of felonies in other jurisdictions. Cf. *Statewide Grievance Committee* v. *Spirer*, supra, 46 Conn. App. 450.

In attorney grievance cases, in the absence of mandatory statutory sanctions, a reviewing court must defer to the discretion of the fact finder, whether it be the trial court or the committee, because the fact finder is in the best position to evaluate the evidence and the demeanor of the parties. See Practice Book § 27N (f); *Silver* v. *Statewide Grievance Committee*, 42 Conn. App. 229, 235–36, 679 A.2d 392, cert. granted, 239 Conn. 948, 686 A.2d 125 (1996).

Thus, our opinion as to what should have been the appropriate sanction for the defendant is not at issue. We must determine, rather, whether the trial court abused its discretion in determining that the appropriate sanction was a reprimand. The abuse of discretion standard is such that it usually precludes the overturning of a trial court's judgment in such cases.[8] "The scope of review by this court on a claim that the trial court abused its discretion is well settled. [E]very reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *Higgins* v. *Karp*, 239 Conn. 802, 808, 687 A.2d 539 (1997).

"Abuse of discretion is synonymous with a failure to exercise a sound, reasonable, and legal discretion. It is a strict legal term indicating that appellate court is of opinion that there was commission of an error of law by the trial court. It does not imply intentional wrong or bad faith, or misconduct, nor any reflection on the

---

[8] We know of only one appellate case in which a grievance committee successfully claimed that the discretion of the trial court had been abused. See *Grievance Committee* v. *Broder*, 112 Conn. 263, 269, 152 A. 292 (1930). Another case, *Silver* v. *Statewide Grievance Committee*, supra, 42 Conn. App. 229, is also an appeal by the grievance committee, but is not relevant here because it deals with whether an attorney's conduct was professional misconduct in the first place, not whether a given sanction was appropriate.

judge but means the clearly erroneous conclusion and judgment—one is that clearly against logic and effect of such facts as are presented in support of the application or against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing; an improvident exercise of discretion; an error of law. . . . A discretion exercised to an end or purpose not justified by and clearly against reason and evidence. Unreasonable departure from considered precedents and settled judicial custom, constituting error of law. . . . A judgment or decision by an administrative agency or judge which has no foundation in fact or in law. *Abuse of discretion by trial court is any unreasonable, unconscionable and arbitrary action taken without proper consideration of facts and law pertaining to matter submitted.*" (Citations omitted; emphasis added; internal quotation marks omitted.) Black's Law Dictionary (6th Ed. 1990). Under the circumstances, we cannot say that the trial court's decision was unreasonable, unconscionable or arbitrary.

In considering an appropriate sanction for the defendant, the trial court weighed evidence concerning his prior record as an attorney, the degree of his involvement in the mortgage scheme, and letters from people who knew him personally and wrote to the court on his behalf. The court also measured the defendant's conduct against rules of professional conduct. The professional conduct of attorneys in Connecticut is governed by the Rules of Professional Conduct, as found in the Practice Book.[9] Although the Rules of Professional Conduct define misconduct; see Rules of Professional Conduct 8.4;[10] they do not provide guidance for

---

[9] The Rules of Professional Conduct were adopted by the judges of the Superior Court on October 1, 1986, and replaced the Code of Professional Responsibility as the authority in Connecticut for attorney conduct.

[10] Rules of Professional Conduct 8.4 provides: "It is professional misconduct for a lawyer to:

determining what sanctions are appropriate. For this reason, Connecticut courts reviewing attorney misconduct have looked to the American Bar Association's Standards for Imposing Lawyer Sanctions (Standards), which do provide guidance. The Standards, which were officially promulgated in 1986, have not been officially adopted in Connecticut. They are, however, used frequently by the Superior Court in evaluating attorney misconduct and in determining discipline, as they were by the trial court in this case. See *Statewide Grievance Committee* v. *Shluger*, supra, 230 Conn. 673 n.10.

Standard 5.0, Violations of Duties Owed to the Public, and the Standards that follow, are relevant to this case. These Standards apply to situations where the attorney has committed a criminal act that involves misrepresentation, fraud or dishonesty. Standard 5.1, Failure to Maintain Personal Integrity, provides guidance as to the circumstances that indicate the general appropriateness of disbarment, suspensions, and reprimands.[11] "In imposing a sanction after a finding of misconduct, a

"(a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

"(b) Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

"(c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

"(d) Engage in conduct that is prejudicial to the administration of justice;

"(e) State or imply an ability to influence improperly a government agency or official; or

"(f) Knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of conduct or other law."

[11] Standard 5.1 of the A.B.A. *Standards for Imposing Lawyer Sanctions* entitled "Failure to Maintain Personal Integrity," provides: "Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud, deceit, or misrepresentation:

"5.11 Disbarment is generally appropriate when:

court should consider the following factors: the duty violated, the lawyer's mental state, and the actual or potential injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors." Standard 3.0. The Standards define aggravation[12] and mitigation,[13] and provide examples of each.

"(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

"(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice. . . .

"5.12 Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice. . . .

"5.13 Reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law."

[12] Standard 9.2, Aggravation, provides: "9.21 Definition. Aggravation or aggravating circumstances are any considerations, or factors that may justify an increase in the degree of discipline to be imposed.

"9.22 Factors which may be considered in aggravation. Aggravating factors include:

"(a) prior disciplinary offenses;

"(b) dishonest or selfish motive;

"(c) a pattern of misconduct;

"(d) multiple offenses;

"(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

"(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

"(g) refusal to acknowledge wrongful nature of conduct;

"(h) vulnerability of victim;

"(i) substantial experience in the practice of law;

"(j) indifference to making restitution;

"(k) illegal conduct, including that involving use of controlled substances."

[13] Standard 9.3, Mitigation, provides in relevant part: "9.31 Definition. Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

"9.32 Factors which may be considered in mitigation. Mitigating factors include:

The trial court in this case chose not to follow the sanction guidelines of Standard 5.1. These state that disbarment or suspension is generally appropriate after the commission of a criminal act. Instead, the trial court focused on the evidence that follows as mitigating factors pursuant to Standard 9.32. Although the defendant was involved in the illegal closings, he did not prepare any of the HUD-1 forms himself. The defendant testified that he never believed that he was committing a crime, nor did he ever intend to do so. His participation in the scheme was not for any personal gain, and he did not have a prior disciplinary record. He cooperated fully with the Federal Bureau of Investigation, the United States Attorney, and the committee. At the time of the closings, he was an inexperienced attorney with no experience in real estate closings other than the scheme involved in his crime. Since his early school days, he had suffered from a learning disability that had made obtaining his education, including successfully completing law school, difficult. Although the defendant was involved in a pattern of misconduct, the trial court found that this aggravating factor was offset by the mitigating ones, particularly the defendant's cooperation with the authorities.

"(a) absence of a prior disciplinary record;

"(b) absence of a dishonest or selfish motive;

"(c) personal or emotional problems;

"(d) timely good faith effort to make restitution or to rectify consequences of misconduct;

"(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;

"(f) inexperience in the practice of law;

"(g) character or reputation;

"(h) physical disability;

"(i) mental disability or chemical dependency including alcoholism or drug abuse. . .

"(j) delay in disciplinary proceedings;

"(k) imposition of other penalties or sanctions;

"(l) remorse;

"(m) remoteness of prior offenses."

Our thorough review of the record leads us to the conclusion that the trial court did not abuse its discretion. Although Standard 5.1 can be read to mean that a reprimand is not appropriate when an attorney has been convicted of a felony, or any crime, the standard is persuasive, but not binding upon the trial court. Section 51-91a, which we have determined can be applied in situations such as this, provides that "such other discipline [lesser than disbarment or suspension or greater than dismissal] as the trial court deems appropriate," may be imposed. Reprimand was a statutory option and the trial court chose that option.

The judgment is affirmed.

In this opinion SCHALLER, J., concurred.

SPEAR, J., dissenting. I respectfully disagree with the majority. I believe that the trial court abused its discretion in issuing only a reprimand in this case.

The defendant was convicted of bank fraud, a crime that carries a penalty of up to thirty years imprisonment. Moreover, the facts underlying his conviction indicate moral unfitness for the practice of law. The defendant reviewed and signed forms required by the United States Department of Housing and Urban Development, certifying that the information contained therein was true and correct. He admitted that he knew that material information on the forms was false and that he signed such forms on at least fifteen separate occasions.

Further support for a reversal in this case is found in our current Rules of Professional Conduct. Offenses involving dishonesty, such as the one of which the defendant was convicted, have been long recognized as bearing directly on a lawyer's fitness to practice law. See, e.g., Rules of Professional Conduct 8.4[1] and comment thereto; *Statewide Grievance Committee* v.

---

[1] See footnote 10 of the majority opinion.

*Shluger*, 230 Conn. 668, 680–81, 646 A.2d 781 (1994); *In re Peck*, 88 Conn. 447, 450–51, 91 A. 274 (1914). "Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud . . . . Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving . . . dishonesty . . . are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation." Comment, Rules of Professional Conduct 8.4.

Moreover, Standard 5.11 of the American Bar Association Standards for Imposing Lawyer Sanctions states that disbarment is the generally accepted sanction where "a lawyer engages in serious criminal conduct a necessary element of which includes . . . misrepresentation [or] fraud . . . or [where] a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." "In imposing final discipline in such cases, most courts impose disbarment on lawyers who are convicted of serious felonies." Id., commentary, p. 36.

I incorporate the reasoning and analysis of my dissent in *Grievance Committee* v. *Spirer*, 46 Conn. App. 450, 467–71, 699 A.2d 1047 (1997), in concluding that the trial court abused its discretion in imposing a reprimand. Because the plaintiff sought only a period of suspension, and not disbarment, I would remand the case to the trial court for the imposition of an appropriate period of suspension.