[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 11471
The following facts are relevant to the resolution of this matter. The respondent-attorney was admitted to the bar of this state in 1980 and is currently a practicing attorney. The respondent was retained by Robert L. Taylor to represent him in a personal injury claim, and subsequently the respondent obtained a settlement of said claim in the amount of $4,800.00. On or about May 2, 1998, the respondent deposited the settlement funds in the amount of $4,800.00 into his client's trust account. Thereafter, on or about May 8, 1998, the respondent disbursed $1,415.00 to his client, Robert L. Taylor, and delivered an accounting to his client indicating his legal services fee and indicating that the sum of $1,785.00 was owed to the client's medical provider. Despite the medical provider's requests to the respondent for payment of the sum of $1,785.00, the medical provider was not paid by the respondent until on or about December 4, 1998.
The client, Robert L. Taylor, filed a complaint on December 7, 1998, asserting that the respondent withheld funds from the settlement for payment of the client's medical bills, and did not pay the medical bills in a timely manner.
On March 11, 1999, the grievance panel for the Judicial District of New Haven filed a determination that there was probable cause to believe that the respondent violated Rule 1.15 of the Rules of Professional Conduct.[1] On September 13, 1999, a reviewing committee of the Statewide Grievance Committee issued its decision in Taylor v.Lafferty, Grievance Complaint #98-0472, land has filed a presentment against the respondent in Superior Court, pursuant to Connecticut Practice Book § 2-47(a)[2] for the imposition of appropriate discipline. The presentment alleges that the respondent's use of the medical provider's funds in and between May and December of 1998 for other purposes constituted a violation of Rules 1.15(a)[3] and 1.15(b)[4] of the Rules of Professional Conduct.
The subject presentment action was filed in the Superior Court, Judicial District of New Haven on January 26, 2000, and a hearing was scheduled for March 9, 2000. Thereafter, the petitioner, Statewide Grievance Committee, moved to have the presentment proceedings transferred to the Judicial District of Ansonia/Milford as the respondent had, in the interim period of time, changed his residence from New Haven to West Haven and his law office address from Branford to Ansonia, Connecticut. Pursuant to Connecticut Practice Book § 12-1(1), the matter, by order of the court in the Judicial District of New Haven, was transferred to the Judicial District of Ansonia/Milford and a hearing was scheduled for May 22, 2000, and thereafter, at the request of the CT Page 11472 respondent and his counsel, the matter was continued to June 12, 2000 and July 10, 2000, when the hearing was commenced.
At the hearing, the petitioner, Statewide Grievance Committee, sought the suspension of the respondent-attorney's license to practice law for a period of not less than one year, nor more than two years. Additionally, the committee requested that the court impose an additional condition that the respondent attorney take and pass the "multi-state professional responsibility exam."
The committee requested the court to consider that the respondent had been reprimanded by the committee on three prior occasions in 1993 and 1995 and by the Superior Court in 1994. The 1993 reprimand from the Statewide Grievance Committee included a violation of Rule 1.15(b), reprimand from the committee in 1995 involved a violation of Rule 8.4(c). From the record and the exhibits presented at the hearing on July 19, 2000, it is unclear what Rule was allegedly violated when the Superior Court issued its reprimand in 1994. However, the court did order the respondent-attorney to complete continuing legal education.Statewide Grievance Committee v. Lafferty, CV94-0365230, Superior Court, Judicial District of New Haven, November 8, 1994 (Booth, J.).
Additionally, the committee has requested that when imposing appropriate disciplinary sanctions, the court consider that the respondent, between May 8, 1998 and December 4, 1998, used the funds due to the client's medical provider, for the respondent's own purposes.
The respondent-attorney has admitted, by way of his Answer to the Amended Presentment of Attorney complaint, that he did receive funds due to his client and his client's medical provider on or about May 8, 1998. He also admits that he did not pay the sum of $1,785.00 to the medical provider until on or about December 8, 1998. He denies that used the funds for other purposes or that he is in violation of Rules 1.15(a) and 1.15 (b) of the Rules of Professional Conduct. In his defense, the respondent states that he inadvertently utilized the funds earmarked for the medical provider, and acknowledged before the committee and this court that it was a "mistake." Furthermore, the respondent argues that he made a good and timely effort to make restitution to the medical provider and, in fact, did so on December 4, 1998.
The court has reviewed a transcript of the Statewide Grievance Committee's hearing held on May 13, 1999 which has been entered as an exhibit in the present proceedings. At that hearing, the respondent-attorney represented himself. At that hearing, the respondent apologized for a "technical violation of Rule 1.15." The respondent replied further by explaining that he had other obligations that he took CT Page 11473 care of with the funds. He admitted further that he had anticipated other revenues that did not materialize until later in the year, and that when those revenues were received, he transferred sufficient monies back to his client's trust account to pay the sum of $1,785.00 to the medical provider. He also admitted at the hearing held on May 13, 1999, that he was aware of the medical provider's continuing demands for payment, and that he had requested of the medical providers that they be "patient" with respect to receiving their funds.
The regulation of attorney disciplinary matters exists within the broader framework of the relationship between attorneys and the judiciary. Statewide Grievance Committee v. Rozbicki, 211 Conn. 232,237, 588 A.2d 986 (1989). An attorney, as an officer of The court, is continually accountable to the court for the manner in which the privilege to practice law is exercised and is subject to the court's discipline. Id., 237-238. When an attorney, by misconduct in any capacity, becomes unfair or unsafe to be entrusted with the responsibilities and obligations of the profession, the right to continue in the enjoyment of the profession may be suspended. In Re Peck,88 Conn. 447, 450, 91 A. 274 (1914).
The court after a review of the record, the exhibits and the testimony at the presentment hearing finds by clear and convincing evidence that the respondent-attorney has violated Rule 1.15(a) and Rule 1.15(b) of the Rules of Professional Conduct. Lewis v. Statewide GrievanceCommittee, 235 Conn. 693, 698 (1996); Statewide Grievance Committee v.Presnick, 215 Conn. 162 (1990). The court must now discuss, whether in the court's discretion sanctions are warranted, and if so, what the sanction should be. Statewide Grievance Committee v. Shluger,230 Conn. 668, 678-79, 646 A.2d 781 (1994). The court has determined that violations of Rule 1.15(a) and 1.15(b) have occurred and the court must properly focus on public policy considerations rather than on punishment.Statewide Grievance Committee v. Fountain, 56 Conn. App. 375 (2000).
The respondent argues that if the court reaches the conclusion that sanctions are warranted that the court should consider mitigating factors. The respondent sets forth that there is an absence of a prior disciplinary record with respect to any misuse of client's funds. Additionally, he argues that dishonest or selfish motives on his behalf are absent, as evidenced by the full restitution of the sum of $1,785.00 to the medical provider on December 4, 1998. He further argues that he was candid in his disclosures and remarks to the Statewide Grievance Committee prior to his presentment to the Superior Court, and that he has shown remorse for his "inadvertent disbursement of the funds in question." CT Page 11474
The court has inherent judicial power to determine an appropriate sanction in light of the entire record before it and is free to act as it deems best for the administration of justice. Statewide GrievanceCommittee v. Glass, 46 Conn. App. 472, 478, 699 A.2d 1058 (1997). Courts considering sanctions against attorneys measure the defendant's conduct against the rules. Id., 480-81.
The Court has considered the respondent's claim for mitigation, and after reviewing the record and exhibits, rejects the respondent's claim that the withholding of the medical provider's funds was "inadvertent" or a "mistake." It clearly was a knowing and intentional act. The court also, however, takes into consideration for the purpose of determining appropriate sanctions, that the sum of money was not great; that the length of time it was withheld from the medical provider was not extremely long; and that the sum due the medical provider was paid in full, several days prior to the initial grievance complaint being filed by the client, Robert F. Taylor.
The court has also reviewed the exhibits relating to the prior reprimands of the respondent noted earlier in this decision. While none of the prior reprimands appear to involve the misappropriation of client or third-party funds, the 1993 reprimand does involve a violation of Rule 1.15(b), wherein the respondent, without authorization from the complainant, did sign the complainant's name on a settlement check; negotiated the settlement check; and retained some of the funds as his attorney's fee, when he also had no authorization to do so.
A court charged with imposing sanctions must carefully evaluate the particular facts and circumstances surrounding any violation. The court must act to safeguard the administration of justice and the protection of the public from misconduct by members of the legal profession. The court must determine whether the respondent's conduct, the circumstances prevailing, and the respondent's character and fitness to practice law, are sufficient to warrant his suspension from the right to practice law.
The court finds that the respondent acted with a dishonest motive. The court is concerned that the respondent has been reprimanded on three separate occasions since 1993. In 1994, the respondent had been ordered by the Superior Court to complete continuing legal education. Subsequent to that reprimand in 1994, the respondent was once again reprimanded by the Statewide Grievance Committee in 1995. for a matter regarding the release of escrow funds. The instant matter was initiated in December 1998.
Having considered the record, the exhibits and the presence of aggravating factors, as well as, the mitigating factors, the Court hereby CT Page 11475 orders that the respondent be suspended from the right to practice law for a period of six months. The court further orders that as a condition of reinstatement that the respondent pass the "multi-state" professional responsibility exam. If testing for said exam is not available within the State of Connecticut within the said six month period of the respondent's suspension, then the time period for successful completion of the exam process shall be extended for an additional six month period.
THE COURT By ARNOLD, J.