[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
The Statewide Grievance Committee (Committee) has brought the present matter seeking disciplinary action pursuant to Practice Book §2-41[1] against the respondent, Edward Morelli, as a result of a felony conviction in the United States District Court, District of Connecticut, on January 28, 2000. While the respondent entered a plea of guilty on October 1, 1996, to the charge of filing false statements in violation of 18 U.S.C. § 1005, he was sentenced on January 28, 2000, to five months imprisonment and two years supervised release including a five month period of home incarceration. In addition, the respondent was ordered to pay restitution in the sum of $332,674 at the rate of $500 per month to be modified based upon his financial circumstances. The respondent has served the five months incarceration and will be confined to his home until January, 2001.
On March 29, 2000, this court placed the respondent on interim suspension and the Committee is now requesting that this court suspend the respondent for at least the term of his supervised release. The respondent does not oppose a suspension, but for a variety reasons, he argues that the suspension should terminate at the conclusion of the home confinement portion of the supervised release. CT Page 14819
 II
"An attorney as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. . . . Therefore, [i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession." (Emphasis in original.) Doe v. Statewide Grievance Committee,240 Conn. 671, 684, 694 A.2d 1218 (1997), quoting Massameno v. StatewideGrievance Committee, 234 Conn. 539, 554-55, 663 A.2d 317 (1995).
Section 2-41 (e) of the Practice Book states, in part, that "[t]he sole issue to be determined in the presentment proceeding shall be the extent of the final discipline to be imposed." This court is certainly familiar with the American Bar Association's Standards for Imposing Lawyer Sanctions (Standards), which, while not adopted by the judges of this state, have been widely used in determining the proper sanctions to impose in disciplinary actions.[2] The system balances aggravating and mitigating factors.[3]
Without discussing each of the specific factors mentioned below, the Committee argues that since the respondent's one count conviction involved multiple instances of filing false statements and that such conduct necessarily involved deceit and misrepresentation,[4] that a substantial suspension — at least for the term of the federal supervised release period — should be imposed.
The respondent argues that the conviction must be put in perspective. The improper conduct involved the failure to disclose the existence of a second mortgage for certain real estate closings, all of which occurred in 1988 and 1989, some eleven years ago. In discussing both the aggravating and mitigating factors, the respondent first stresses that he has no prior disciplinary record. Next, the respondent emphasizes that there was no dishonest or selfish motive. He testified that he had an extremely successful real estate practice having handled over 4,000 closings and representing, at the time of the incidents, approximately thirty banks. The unlawful activity apparently had stemmed from a plan CT Page 14820 devised by a banker and a real estate agent, and, while they did in fact derive substantial economic benefit, the respondent received something less than $3000 in total legal fees as attorney for the lender. Thus, the respondent argues that selfishness is not an aggravating factor.
The respondent next notes that when he was contacted by the federal prosecutors in 1994, he immediately confessed his wrongdoing and cooperated with the government — working hundreds of hours — gathering information for the prosecution of others. The respondent's actions in working closely with the government certainly can be considered a mitigating factor.
In connection with whether the conduct involved a single pattern of behavior or multiple offenses, the respondent acknowledges that the improper conduct involved nine closings, although his plea concerned only one instance. The respondent notes that the acts occurred about five years after he was admitted to practice. The respondent certainly could not be considered inexperienced in the real estate field of law.
The issue of the vulnerability of the victim is multifaceted. Surely the fact that the respondent was representing a financial institution as opposed to an individual does not lessen the conduct or even make the client necessarily less vulnerable. Yet, the respondent makes a number of arguments in his defense. Again, the conduct involved the respondent's failure to disclose the existence of second mortgages at the time of the closing of residential properties. The properties all went into foreclosure. The respondent argues that the victim bank engaged in a no asset and "no income verification" loan process and that the foreclosures occurred, in part, as a result of both the downturn in the Hartford economic market and gang warfare in the particular neighborhood. (Respondent's Memorandum, p. 5.) While conceding that the subject conduct was clearly wrong, the respondent maintains that it did not cause the financial loss to the bank. Moreover, the respondent points out that the lending bank was actually purchased by a larger bank which sued, then settled, with the respondent in 1998. This court had no specific evidence concerning the individual foreclosure actions or the settlement with the successor bank and can make no findings as to any of those issues. It is important to note, however, that Judge Covello's sentence did include a restitution component of some $332,674.
Finally, the respondent stresses that when confronted in 1994, he quickly confessed his guilt. Moreover, as noted, the respondent entered into the plea agreement in October, 1996, but was not sentenced until January, 2000. The respondent commented on the impact the six year waiting period had on his and his family's life up to the time he went to prison. While the respondent continued to practice law until his CT Page 14821 suspension in March, 2000, he terminated his real estate practice in 1994. The respondent informed the court that his time in prison was terrible and made even more so by a snapped Achilles tendon. This court was impressed with the respondent's genuine expression of remorse.
This court received copies of a number of very complimentary letters that were initially addressed to Judge Covello in support of the respondent. Apparently, the respondent has been very active in his community.
 III
This court previously has entered suspensions for the term of the incarceration or probation for attorneys who have been convicted of felonies. See Statewide Grievance Committee v. Hochberg, Superior Court, judicial district of Hartford, Docket No. 575688 (July 14, 1999) (25 Conn.L.Rptr. 213); Statewide Grievance Committee v. Rothenberg,
Superior Court, judicial district of Hartford, Docket No. 598362 (July 24, 2000). As indicated, the Committee seeks such a disciplinary order and the respondent argues that this court should depart from that stance in this case.[5]
While recognizing this court's position, the respondent stresses that other cases support a more lenient view. First, the respondent refers to our Supreme Court's opinion in Statewide Grievance Committee v. Spirer,247 Conn. 762, 725 A.2d 948 (1999), in which the court upheld a six month suspension in a case in which the respondent had been sentenced to a three year period of probation after conviction in federal court of two felonies, finding that the trial court did not abuse its discretion. In the somewhat related case of Statewide Grievance Committee v. Glass,46 Conn. App. 472, 699 A.2d 1058 (1997), another felony conviction with a three year term of probation, a judicial reprimand was upheld by the Appellate Court after finding that the trial court had not abused its discretion. Superior Court judges have also imposed disciplinary measures of suspension for less time than the criminal sentence. See StatewideGrievance Committee v. Skolnick, Superior Court, judicial district of New Haven at New Haven, Docket No. 407542 (April 24, 1998, Silbert, J.) (attorney sentenced to two years probation for violation of26 U.S.C. § 7206 (1) but only suspended from the practice of law for one year); Statewide Grievance Committee v. Bennett, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 55198 (August 30, 1996, Rush, J.) (attorney sentenced to three years probation for violation of 18 U.S.C. § 1957 but only suspended from the practice of law for three months); Statewide Grievance Committee v. Hoffman, Superior Court, judicial district of Stamford Norwalk at Stamford, Docket No. 138427 (August 24, 1994, Lewis, J.) (attorney sentenced to three years CT Page 14822 probation for violation of 18 U.S.C. § 1014 but only given reprimand).
In Statewide Grievance Committee v. Rothenberg, supra, Superior Court, Docket No. 598362, this court found no reason to depart from its stated policy that it would be imprudent to reinstate an attorney while he was still serving his sentence. Support has been found not only in this state; see, e.g., Statewide Grievance Committee v. Mercer-Falkoff,
Superior Court, judicial district of New Haven, Docket No. 404805 (March 17, 2000, Silbert, J.) (26 Conn.L.Rptr. 669); but also in other jurisdictions. See, e.g., In the Matter of the Application of Dortch,687 A.2d 245, 251 (Md.App. 1997);In the Matter of Micci,225 App.Div.2d 888,639 N.Y.S.2d 642, 643 (1996); In the Matter ofMarinangeli,211 App.Div.2d 272,628 N.Y.S.2d 79, 80 (1995); In the Matter of Ament, 890 S.W.2d 39, 41
(Tex. 1994); In re Culpepper, 770 F. Sup. 366, 373 (E.D.Mich. 1991); Inthe Matter of the Reinstatement of Walgren, 708 P.2d 380, 388 (Wash. 1985) In the Matter of Griffin, 677 P.2d 614, 614-15 (N.M. 1983); TheFlorida Bar Petition of Pahules, 382 So.2d 650, 651 (Fla. 1980).
In Statewide Grievance Committee v. Mercer-Falkoff, supra,26 Conn.L.Rptr. 669, Judge Silbert wrestled with the conflict between the persuasive mitigating factors[6] and the necessity of safeguarding the administration of justice. Many of those same mitigating factors exist in this case as well. Additionally, this court is aware that despite having confessed to his misconduct in 1994, and having pleaded guilty in 1996, the respondent was not sentenced until 2000. Morelli assisted the government in its prosecution of others involved in similar schemes during this period, which may have exacerbated the delay. of course, one of the Standards' mitigating factors is the delay in the disciplinary proceedings. See Standards § 9.32(j). While the petitioner surely did not delay the institution of these proceedings, the delay in the criminal prosecution has impacted these proceedings.
The Standards, however, state that "the most fundamental duty which a lawyer owes the public is the duty to maintain the standards of personal integrity upon which the community relies. The public expects the lawyer to be honest and abide by the law; public confidence in the integrity of the officers of the court is undermined when lawyers engage in illegal conduct." Standards § 5. Faced with the same balancing issues, this court strongly believes that the reasoning of the court in In ReCulpepper, supra, 770 F. Sup. 373, holds true: "Although the Court was impressed with Mr. Culpepper's testimony and sincerity concerning his contrition and rehabilitation, as well as the testimony of other witnesses at the hearing regarding his competence and learning in the law, the Court finds that his resumption to the practice of law before CT Page 14823 this Court before he has completed his term of parole on the sentence of incarceration on Counts 3 and 4 would be detrimental to the integrity and standing of the Federal Bar."[7] That court further added that "[a]t a time such as the present when the ethics and practices of the legal profession are under intense public scrutiny and criticism, it seems to this Court inappropriate to reinstate to the practice of law an attorney who is still serving a sentence of incarceration imposed by this Court. . . . In this Courts view, it would be a disservice to the public, to the practicing bar and this Bench to effectively say that, although a person is legally disabled, by virtue of his criminal conviction status, from a serving as a juror, it is acceptable for him to serve as an officer of this court." Id., 374.[8]
This court is in agreement and therefore, for the reasons stated above, this court hereby orders, as final discipline to be imposed, that Mr. Morelli be suspended for the term of his supervised release.[9]
Berger, J.