[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
The Statewide Grievance Committee (hereinafter, the committee) has filed this presentment against the respondent, Andrew David Rhee, pursuant to Connecticut Practice Book § 2-41.[1] Rhee pleaded guilty in the United States District Court, Southern District of New York on December 7, 1998, to one count of conspiracy to commit wire fraud and defraud persons in connection with the sale of commodities, a felony, in violation of Title 18 of the United States Code, § 371. The information alleges, inter alia, that the respondent together with a Thomas Edmund Kelley, a commodity futures trading specialist at the trading company of John W. Henry Co., engaged in an insider scheme from March, 1996 to February, 1998 involving over 130 trades which resulted in gross profits of $4,700,000. He was sentenced to a term of thirty-three months, fined $100 and placed on supervised release for three years after release from imprisonment.
Mr. Rhee began his prison term on February 10, 1999, and on March 31, 1999, this court placed Mr. Rhee on interim suspension pursuant to Practice Book § 2-41(e) and deferred the final disposition until his release from imprisonment. He finished serving his sentence in May, 2000 and reported to a halfway house in Miami, Florida for six months ending in November, 2000. His supervised release program commenced at that time and expires in November, 2003. In August, 2002, the respondent, through counsel, contacted the court as earlier stated in the March, 1999 order and moved for imposition of the final discipline in September, 2002.
An evidentiary hearing was held on October 30, 2002, at which the committee requested that this court impose a suspension for the length of his sentence or until November, 2003. Mr. Rhee moved this court to terminate the interim suspension and impose no additional penalty. He testified that he is licensed only in Connecticut but that he has never practiced law and has been living in Florida since 1996. Upon graduation CT Page 16166 from law school in 1991, he went into the trading sector. He stated that he notified the committee, as required by § 2-41 (a) of the Practice Book, upon conviction. Mr. Rhee indicated that the full amount of his profit was forfeited to the government and that he testified that he had a drinking problem, that he attended an inpatient drug and alcohol program in prison and that as part of his release program he continues with alcohol counseling at this time. He now works as a paralegal and has worked as a volunteer at an adult day care center four to five hours each week. Mr. Rhee stated that termination of the suspension will allow him to get his life back in order and perhaps facilitate his obtaining a real estate broker's license in Florida. The first time he applied in July, 2001, he was denied a license. He does not intend to relocate to Connecticut.
Mr. Rhee was somewhat tentative in his acknowledgment of the existence of victims from his activities but did exhibit some remorse.
 II
"An attorney as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. . . . Therefore, [i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession." (Emphasis in original; internal quotation marks omitted.) Doe v.Statewide Grievance Committee, 240 Conn. 671, 684, 694 A.2d 1218 (1997), quoting Massameno v. Statewide Grievance Committee, 234 Conn. 539,554-55, 663 A.2d 317 (1995).
Practice Book § 2-41(e) states, in part, that "[t]he sole issue to be determined in the presentment proceeding shall be the extent of the final discipline to be imposed." This court is certainly familiar with the American Bar Association's Standards for Imposing Lawyer Sanctions (Standards), which, while not adopted by the judges of this state, have been widely used in determining the proper sanctions to impose in disciplinary actions.[2] The system balances aggravating and mitigating CT Page 16167 factors.[3] In arguing for a continued suspension, the committee stresses that although the respondent pleaded to one felony count, Mr. Rhee was involved in over 130 different inside trades; clearly evidence of both a pattern of misconduct under § 9.22(c) as well as multiple offenses under § 9.22(d). The committee also points out that while the victims are perhaps not readily identifiable, their vulnerability, a consideration pursuant to § 9.22(h), is not lessened but enhanced precisely because they are part of the faceless market.
Finally, the committee refers to § 5.0 of the Standards, which notes that "[t]he most fundamental duty which a lawyer owes the public is the duty to maintain the standards of personal integrity upon which the community lies. The public expects the lawyer to be honest and to abide by the law; public confidence in the integrity of officers of the court is undermined when lawyers engage in illegal conduct." The following section entitled, "5.1, Failure to Maintain Personal Integrity," sets forth recommended disciplinary action for certain violations and while the committee acknowledges that the Standards recommend disbarment for serious criminal conduct, including that in the present case, it argues only that this court impose a suspension for the remainder of the supervised release or in effect a total suspension of four and one-half years.
As indicated, Mr. Rhee asks that the interim suspension be terminated and that no further penalty be imposed. He stresses that he has served his sentence, has confronted and controlled his drinking problem and now needs to get on with his life. The court assumes that while not specifically mentioned, such mitigating factors to be considered are those set forth in § 9.32(i)(4) and (k).
 III
In examining § 3.0 of the Standards, the duty (§ 3.0(a)) violated by Mr. Rhee in committing the acts that lead to the conviction is clear; he violated at least Rule 8.4(2) ("It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects") and Rule 8.4(3) ("engage in conduct involving dishonesty, fraud, deceit or misrepresentation"). See also Standards, § 5.0. The injury (3.0(c)) of some $4.7 million dollars is likewise clear. The aggravating and mitigating factors (3.0(d)) have been addressed. As to Mr. Rhee's mental state (3.0(b)), this court heard some general testimony that he had a problem with alcohol and that he was ordered to undergo treatment as part of his sentence. The court did not hear any specific testimony on how the alcohol problem was connected to the 130 CT Page 16168 illegal trades over the two year period.
This court is mindful that Mr. Rhee has served the incarceration portion of his sentence and that is surely a mitigating factor. The monies have all been forfeited to the government. As he is still on supervised release, however, the minimum discipline should be a suspension for the remainder of his supervised release as indicated by this court in other decisions.[4] See In Re Culpepper, 770 F. Sup. 366, (E.D.Mich. 1991), in which the court stated "[a]lthough the Court was impressed with Mr. Culpepper's testimony and sincerity concerning his contrition ahd rehabilitation, as well as the testimony of other witnesses at the hearing regarding his competence and learning in the law, the Court finds that his resumption to the practice of law before this Court before he has completed his term of parole on the sentence of incarceration on Counts 3 and 4 would be detrimental to the integrity and standing of the Federal Bar." Id., 373. That court further added that "[a]t a time such as the present when the ethics and practices of the legal profession are under intense public scrutiny and criticism, it seems to this Court inappropriate to reinstate to the practice of law an attorney who is still serving a sentence of incarceration imposed by this Court. . . . In this Courts view, it would be a disservice to the public, to the practicing bar and this Bench to effectively say that, although a person is legally disabled, by virtue of his criminal conviction status, from a serving as a juror, it is acceptable for him to serve as an officer of this court." Id., 374.
The Standards, however, do not recommend a suspension. In § 5.0, a serious crime is defined as "any felony and any lesser crime a necessary element of which involves interfering with the administration of justice, false swearing, misrepresentation, fraud, deceit, bribery, extortion, misappropriation, theft, or an attempt or a conspiracy to commit a `serious crime.'" Practice Book § 2-41(c) defines "serious crime" as "any felony as defined in the jurisdiction in which the attorney was convicted." The Standards at § 5.11 recommend disbarment absent aggravating or mitigating circumstances. The commentary suggests that "a lawyer who engages in any of the illegal acts . . . has violated one of the most basic professional obligations to the public, the pledge to maintain personal honesty and integrity." Standards, 01:827. SeeStatewide Grievance Committee v. Glass, 46 Conn. App. 472, 485-86,699 A.2d 1058 (1997). Indeed, it states that "most courts impose disbarment on lawyers who are convicted of serious felonies." Id., 486. At the hearing, Mr. Rhee commented that he had a law abiding life with the exception of this one transgression. The problem is that while there may have been one guilty plea, there were a multitude of transgressions totaling over 4.7 million dollars. This is not just one serious crime; it CT Page 16169 is many.[5]
Accordingly, consistent with the decisions of other courts which have disbarred attorneys for their violation of their duty owed to the public in committing a serious crime, Statewide Grievance Committee v.Sherbacow, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV 88-034650 1 (August 22, 1991, Hammer, J.) (6 CSCR 840); Sullivan v. Town of Monroe, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 00-037054S (November 2, 2001, Mottolese, J.); Statewide Grievance Committee v. Somers, Superior Court, judicial district of Hartford, Docket No. CV 998-0585853 (September 8, 1999, Langenbach, J.) this court orders as the final discipline to be imposed that Mr. Rhee is hereby disbarred.
 ___________________ Berger, J.